No. 48,500

ANGELA DAWN CHANDLER, a minor, by KAREN G. CHANDLER, her mother and next friend, and KAREN G. CHANDLER, individually, *Appellants,* v. NEOSHO MEMORIAL HOSPITAL and ALEXANDER MIH, *Appellees.*

(574 P.2d 136)

Opinion filed September 7, 1977.

*Gerald Michaud* and *Jerry K. Levy,* of Michaud and Cranmer, Chartered, of Wichita, argued the cause, and were on the brief for the appellants.

*Charles F. Forsyth,* of Erie, argued the cause, and was on the brief for appellee, Alexander Mih, and *Randall D. Palmer,* of Pittsburg, argued the cause, and was on the brief for appellee, Neosho Memorial Hospital.

*Wayne T. Stratton* and *Harold S. Youngentob,* of Goodell, Casey, Briman & Cogswell, of Topeka, were on the brief *amici curiae* for Kansas Medical Society and Kansas Hospital Association.

*M. Ralph Baehr,* of Wichita, was on the brief *amicus curiae* for The Kansas Trial Lawyers Association.

The opinion of the court was delivered by

MILLER, J.: We are called upon to determine whether the trial court erred in excluding the testimony of plaintiff's expert medical witnesses in this case of alleged medical malpractice. We conclude that the court did err, and we reverse.

The minor plaintiff, Angela Dawn Chandler, was born prematurely in the Neosho Memorial Hospital. Alexander Mih was the attending physician. Plaintiff claims that the defendants, Dr. Mih and the hospital, negligently caused excessive amounts of oxygen to be continuously administered to her over an extended period of time, causing her to be blind.

During trial, plaintiff called two physicians as expert witnesses. Both were certified pediatricians with wide experience. One was a professor of pediatrics at the University of California at Los Angeles, the other at the University of Illinois. The trial judge found both witnesses to be well qualified.

Neither witness had practiced medicine in Chanute, in a community of similar size, or in a nearby community. One testified that through his study of publications of the American Medical Society and the journals published for use by general practitioners, and through his participation in medical seminars, he knew the degree of learning and skill ordinarily possessed by general medical practitioners in Chanute and similar communities; he was aware of the staff, the facilities and the equipment available at Chanute; and in his opinion the standard of care for premature infants was the same in Chanute as it is in all parts of the United States.

A proffer was made pursuant to K.S.A. 60-243 (*c*) of the witness's opinion testimony. He was prepared to testify that in his opinion the standards for the administration of supplemental oxygen to premature infants is the same for all members of the

medical profession and in all hospitals throughout the United States; that both defendants deviated from those standards; and that the departure of Dr. Mih from medical standards, and of the hospital from standard hospital procedures, was the direct cause of Angela Chandler's blindness.

The trial court held as a matter of law that the standards of care for the treatment of premature infants *could not* be the same nationwide; that the standards *must* be different in Chanute and similar communities from what the standards are elsewhere in the United States; and that since the witness had no experience in Chanute or in any similar community, he was not qualified to express his proffered opinions. A like ruling was made as to the second expert. At the close of plaintiff's evidence, the trial court held that plaintiff had failed to establish negligence and causation by expert medical testimony, which was required under the circumstances (see *Funke v. Fieldman,* 212 Kan. 524, 512 P.2d 539), and directed a verdict for the defendants.

Our rules are familiar, and have been often stated. A physician or surgeon is expected to have and to exercise that reasonable degree of learning and skill ordinarily possessed by members of his profession and of his school of medicine in the community where he practices, or similar communities; similarly, a hospital is required to exercise that degree of care, skill and diligence used by hospitals generally in the community or in similar communities under like circumstances. *Avey v. St. Francis Hospital & School of Nursing,* 201 Kan. 687, 442 P.2d 1013, and cases cited therein.

We have never adhered to the "strict locality rule," although our early cases recognized that those practicing medicine in rural communities might be subject to less stringent or different standards than those practicing in populous urban centers. See *Tefft v. Wilcox,* 6 Kan. 46, decided more than a century ago.

Justice Kaul, speaking recently for a unanimous court in *Avey,* supra, said:

"It is quite clear from a review of the cases cited that this court, by including the phrase '*or similar communities,*' has not given the restrictive application to the locality rule, such as was applied in some jurisdictions, in medical malpractice cases.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"*In our judgment the need for emphasis on locality no longer exists.* Even though in some cases allowances must be made in defining similar localities by

the recognition of such factors as population, the availability of medical facilities, medical equipment, etc., we believe the knowledge of similar conditions is the essential element rather than geographical proximity. We do not mean to say that the nature of the locality of a hospital may be totally disregarded but in our judgment geographic proximity is only one factor to be considered in determining similarity.

"The standardization of hospital and nursing procedures, brought about by the Kansas statutes, regulations promulgated thereunder, and the standards of the joint commission on hospital accreditation, serve to deemphasize the strict application of geographic locality. The standards, and regulations referred to, recognize in many instances the differences in hospitals with respect to size and services offered.

"We hold, therefore, that, where a proper foundation of knowledge of similarity of conditions is established, the testimony of an otherwise qualified expert is admissible as evidence, tending to show the standards of care required of a hospital in a similar community involving a case under like circumstances. . . ." (Emphasis supplied.) (pp. 696, 697-698.)

"Locality" has to do with population, location, hospital and laboratory facilities, staff, and the medical practitioners and specialists available. It is simply one of the factors to be considered. A small hospital would not ordinarily have or be expected to provide specialized equipment and facilities necessary for the treatment of diseases or conditions which are rarely or infrequently found; on the other hand, it would be expected to have that basic equipment essential for the care and treatment of those diseases and conditions regularly encountered among its patients.

Advances in travel, communication, and publication over the past century have markedly reduced the gap between urban and rural practitioners in all professions. Medical and other professional journals are widely and promptly distributed. Seminars, attended by practicing members of the professions from communities of all sizes, are not only commonplace but are regarded by most professionals as essential to the continuing learning process required.

No doubt many areas of medical practice and hospital care are now standard throughout the United States. In yet other areas of medical practice and hospital care, procedures and treatment may differ because of local preference and experience, because of altitude and climate, or because of the availability or lack of equipment, facilities, and staff. We are not, therefore, prepared to say that national standards apply in every area of health care; but we recognize that *some* standards may well be of universal application.

The standard of medical and hospital care which is to be applied in each case is not a rule of law, but a matter to be established by the testimony of competent medical experts. An expert may acquire knowledge of the applicable standard in the same manner that he acquires his other expert knowledge— through practical experience, formal training, reading, and study, or through a combination of those. See *Casey v. Phillips Pipeline Co.,* 199 Kan. 538, 431 P.2d 518; and *Grohusky v. Atlas Assurance Co.,* 195 Kan. 626, 408 P.2d 697.

The witnesses here, well qualified medical experts, claimed knowledge of the applicable standards of care, and they gave a reasonable explanation as to how such knowledge was acquired. We recognize the rule that the determination of the qualifications of a witness to testify as an expert is a matter left to the sound discretion of the trial court, and that discretionary rulings are not reviewable in the absence of abuse of discretion or error of law. *Avey v. St. Francis Hospital & School of Nursing,* supra. Here, however, the trial court erred as a matter of law, and not as a matter of discretion, when the court ruled that the applicable standard could not be the same in Chanute as it is elsewhere in the United States. We conclude that the proffered expert testimony should have been received and admitted into evidence.

One other matter deserves attention. Appellees contend that the expert testimony was inadmissible because the background facts upon which it was based were neither perceived by or personally known by the witness, nor "made known to the witness at the hearing," as required by K.S.A. 60-456 (*b*). Appellees argue that the only way for an expert witness (who was not personally present during the occurrence) to acquire background information and data upon which to base opinion testimony under this statute is for the witness to attend throughout the entire trial and to hear all the testimony and examine all exhibits admitted, so that the facts are perceived by him *at the hearing.* We do not so construe the statute.

K.S.A. 60-456 (*b*) reads as follows:

"If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness."

Where the facts and data are not perceived by or personally known by the witness, they must be supplied to the witness so that he is aware of them at the time he testifies. This may be done by having him attend throughout the trial; but it is certainly much more common, and just as proper, for counsel to provide the witness with the factual background prior to the time he expresses his opinion. The facts made known to him and upon which his opinion is based should, of course, be in evidence; as we said in *Casey v. Phillips Pipeline Co.,* supra, p. 546, "made known" as used in K.S.A. 60-456 (*b*) refers to facts put in evidence. Before stating his opinion, the witness may be examined concerning the data upon which the opinion is founded, if the judge so requires, and upon cross-examination the witness may be required to state the data which he has considered. K.S.A. 60-457, 458.

The witnesses here had not been inside the hospital. We suggest that where available hospital facilities and equipment are factors of some importance, the better practice would be to have the witnesses tour that facility before trial.

For the reasons stated, the judgment of the district court excluding the testimony of plaintiff's expert medical witnesses and directing a verdict at the close of plaintiff's evidence is reversed, with directions to grant a new trial.