**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 12 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

EMERY DUANE GUST and DENNIE
G. DIGHERA,

     Plaintiffs - Appellees,

v.

JEFFREY S. JONES and WILLIS
SHAW FROZEN FOOD EXPRESS,
INC.,

     Defendants - Appellants.

_____

No. 97-3059

EMERY DUANE GUST,

     Plaintiff - Appellee,

and

DENNIE G. DIGHERA,

     Plaintiff - Appellant,

v.

JEFFREY S. JONES and WILLIS
SHAW FROZEN FOOD EXPRESS,
INC.,

     Defendants - Appellees.

No. 97-3067

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 95-1129-JTM)**

_____

James R. Jarrow (Robert M. Carroll with him on the briefs) of Baker, Sterchi, Cowden & Rice, L.L.C., Overland, Park, Kansas, for Defendants-Appellants Jeffrey S. Jones and Willis Shaw Frozen Food Express, Inc.

Craig Kennedy of Johnson, Kennedy, Dahl & Willis, Wichita, Kansas, for Defendant-Appellee/Cross-Appellant Dennie G. Dighera.

Robert S. Jones (Robert A. Martin with him on the brief) of Norton, Wasserman, Jones & Kelly, Salina, Kansas, for Plaintiff-Appellee Emery Duane Gust.

_____

Before **PORFILIO**, **McKAY**, and **TACHA**, Circuit Judges.

_____

**McKAY**, Circuit Judge.

_____

On December 3, 1993, two vehicles collided near the intersection of Kansas Highway 75 and Interstate 35 in Coffey County, Kansas. The accident involved a tractor-trailer driven by Defendant Jeffrey Jones within the scope of his employment by Defendant Willis Shaw Frozen Foods Express, Inc., and a pickup truck driven by Plaintiff/Cross-Defendant Dennie Dighera. Plaintiff Emery Gust was a passenger in the truck operated by Mr. Dighera. The accident occurred

when Mr. Jones initiated a left turn from northbound Highway 75 onto the ramp leading to southbound Interstate 35. Mr. Dighera was proceeding south on Highway 75 and, when the tractor-trailer turned, it blocked Mr. Dighera's path. Mr. Dighera crashed into the rear tires of the tractor portion of the Willis Shaw rig.

Mr. Dighera and Mr. Gust suffered physical injuries as a result of the accident. Mr. Gust's injuries included a fracture of his right femur and bone fractures in his left foot and ankle. Mr. Dighera and Mr. Gust brought a diversity suit against Willis Shaw and Mr. Jones in the United States District Court for the District of Kansas. Both plaintiffs claimed damages for their medical expenses, and Mr. Gust sought an additional award for the loss of past and future wages and for future medical expenses. Although they admitted partial blame for the accident, Defendants asserted that Mr. Dighera also was partially to blame for the accident. Defendants also contested the nature and extent of the damages claimed by Mr. Gust. In addition, Mr. Gust filed a cross-claim against Mr. Dighera for damages. At the close of Mr. Gust's case, Mr. Dighera moved the court to direct a verdict that he was not liable for Mr. Gust's damages. The court denied this motion. At the close of all of the evidence, Mr. Dighera renewed his motion for a directed verdict, and the district court again denied the motion. The jury awarded Mr. Gust $868,251.53 and Mr. Dighera $40,800.09, and it found

Willis Shaw and Mr. Jones sixty-five percent responsible for the accident and Mr. Dighera thirty-five percent responsible.[1]

After judgment was entered, Mr. Dighera, Willis Shaw, and Mr. Jones moved for a new trial. The court denied these motions. Willis Shaw and Mr. Jones now ask this court to reverse the jury's verdict and remand the case for a new trial, alleging various errors. Additionally, Mr. Dighera complains that his right to cross-examine witnesses was erroneously limited and he appeals the district court's refusal to grant him a directed verdict at the end of Mr. Gust's case.

We address the allegations of error in turn, cognizant of the principle that motions for a new trial are committed to the sound discretion of the trial court. See McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984); Weese v. Schukman, 98 F.3d 542, 550 (10th Cir. 1996). We review the district court's decision to deny a new trial motion for an abuse of discretion. "We will reverse the denial of a motion for a new trial only if the trial court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Weese , 98 F.3d at 549. "Parties seeking reversal of a jury verdict or of a denial of a motion for new trial must establish the alleged trial

---

[1] Pursuant to Mr. Dighera's motion and Kansas statutory law, the court decreased the award to Mr. Gust to $768,251.53.

errors were both prejudicial and clearly erroneous." Shultz v. Rice, 809 F.2d 643, 655 (10th Cir. 1986); see Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp., 571 F.2d 1144, 1148 (10th Cir.), cert. denied, 439 U.S. 862 (1978). We review *de novo* decisions of the district court which are based on an interpretation of substantive state law. See Salve Regina College v. Russell, 499 U.S. 225, 231 (1991); Wolfgang v. Mid-America Watersports, Inc., 111 F.3d 1515, 1528 (10th Cir. 1997).

## I.

Defendants first claim that the court erroneously excluded the testimony of their proposed medical expert, Dr. Anthony Pollack. The district court excluded the testimony of Dr. Pollack because Defendants failed to comply with the court's orders and Federal Rule of Civil Procedure 26. We review the district court's evidentiary rulings, including its decision to admit or deny expert testimony, for an abuse of discretion. See Robinson v. Missouri Pac. R.R. Co., 16 F.3d 1083, 1086, 1090 (10th Cir. 1994); Orth v. Emerson Elec. Co., 980 F.2d 632, 637 (10th Cir. 1992).

Rule 26(a)(2)(B) requires that "a written report [be] prepared and signed by the witness. The report *shall contain a complete statement of all opinions to be expressed* and the basis and reasons therefore." Fed. R. Civ. P. 26(a)(2)(B)

(emphasis added).  Pursuant to this rule, the district court ordered the parties to disclose any opinions to be offered by previously designated expert witnesses by October 25, 1996, and it specified that the opinions expressed in the expert witnesses' testimony at trial would be limited by those prior disclosures.  At trial, the court refused to allow Dr. Pollock to offer opinion testimony on deviation from the relevant standard of care because his report did not express the opinion that the actions of the physician who initially treated Mr. Gust, Dr. Sudheer Mitra,[2] rose to the level of malpractice.

The standard of ordinary care does not mandate that a physician must always correctly diagnose a patient's ailments or that she must always identify the most appropriate medical response; medical malpractice under Kansas law means that a doctor did not exercise the ordinary skill and diligence of a competent physician in a comparable medical community.  See Chandler v. Neosho Mem. Hosp., 574 P.2d 136, 138 (Kan. 1977); Collins v. Meeker, 424 P.2d 488, 493 (Kan. 1967).  Dr. Pollock's report did not indicate that he was aware of the standard of care in Burlington, Kansas, where Dr. Mitra practices, nor did it state that the course of treatment Dr. Mitra followed was not recognized and approved in Burlington or a similar community in 1993.  Dr. Pollock reported that, in his

---

[2] Mr. Gust was initially treated at the Coffey County Hospital by Dr. Mitra, but he was subsequently under the care of Dr. Gary Harbin at a hospital near Salina, Kansas.  Both doctors testified at trial.

opinion, Mr. Gust's injuries ought to have been treated by an orthopaedic surgeon; that most orthopaedic surgeons probably would have treated Mr. Gust's femur with an intramedullary rod; and that Mr. Gust's recovery would probably have been more comfortable with the intramedullary rod. The closest Dr. Pollock came to stating that Dr. Mitra breached the standard of care was when he stated that the fixation method used by Dr. Mitra was "inadequate because there were insufficient screws placed above and below the fracture sites. Normally . . . , at least three screws should be used. This is not obviously a hard-and-fast rule, but it is certainly an excellent guideline and in this case was probably necessary." R., Vol. I., Doc. 17 at 137. None of Dr. Pollock's statements suggested that Dr. Mitra's conduct did not rise to the level of ordinary skill and diligence of a competent physician in the Burlington medical community. Where a physician has two or more possible courses of treatment, he is not negligent if he selects one of the methods recognized in the profession at the time and place of treatment, even if subsequent events show that his choice was not the best. See Natanson v. Kline, 350 P.2d 1093, 1098-99, clarified on denial of reh'g, 354 P.2d 670 (Kan. 1960).

A fair reading of Dr. Pollock's report shows that he may have treated Mr. Gust differently than Dr. Mitra did, but it does not express the opinion that Dr. Mitra's actions rose to the level of malpractice. Thus, we hold that the

district court did not abuse its discretion in refusing to allow Dr. Pollock to testify that Dr. Mitra's acts breached the appropriate standard of care; such testimony would have constituted presentation of an opinion not offered in Dr. Pollack's report. We further hold that the court's subsequent decision to exclude Dr. Pollock's testimony altogether was not an abuse of discretion. Because Dr. Pollock could not testify that Dr. Mitra's actions amounted to a deviation from the relevant standard of care and therefore constituted malpractice, his testimony was irrelevant to any issues before the district court and, therefore, was inadmissible. See Fed. R. Evid. 402.

## II.

Defendants insist that, even without Dr. Pollock's testimony, they presented sufficient evidence to create a jury question of whether Dr. Mitra, a non-party, caused any part of Mr. Gust's damages. They claim that the district court erred by not allowing them to offset their liability for Mr. Gust's injuries by comparing their fault to Dr. Mitra's alleged fault. Defendants maintain that the Kansas comparative fault scheme required the court to allow the jury to consider Dr. Mitra as a potentially responsible party.

Whether an actor's conduct constitutes negligence is generally a factual question left to a jury. However, "in rare cases where the evidence is susceptible

to only one possible inference," the trial court should not allow the jury to consider a party's alleged negligence. Carl v. City of Overland Park, Kan., 65 F.3d 866, 869 (10th Cir. 1995); see also Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 454, 459 n.7 (10th Cir. 1982) (stating that a trial court should apply the directed verdict standard when deciding if there is sufficient evidence of fault to allow phantom parties to be listed on the verdict form). When reviewing diversity actions, we examine the sufficiency of the evidence on a particular issue by reference to the burden of proof dictated by forum state law. See Wolfgang, 111 F.3d at 1522 (applying substantive Kansas law to determine sufficiency of evidence in context of district court's denial of judgment as a matter of law); Oja v. Howmedica, Inc., 111 F.3d 782, 792 (10th Cir. 1997) (applying same standard in the context of directed verdict decision).

The purpose of the Kansas statutory system of comparative negligence is to allow the comparative fault of all potential tortfeasors to be determined in a single action. See Kan. Stat. Ann. § 60-258a; Hardin, 691 F.2d at 454; Albertson v. Volkswagenwerk Aktiengesellschaft, 634 P.2d 1127, 1132 (Kan. 1981); Eurich v. Alkire, 579 P.2d 1207, 1208-09 (Kan. 1978). Potential tortfeasors need not be made parties before their fault may be compared for the purpose of assigning fault. See Hardin, 691 F.2d at 454-55; Brown v. Keill, 580 P.2d 867, 876 (Kan. 1978). However, allegations that a nonparty's negligence caused a plaintiff's

harm must be supported by adequate evidence before the negligence of that person may be argued to the jury or before the judge may instruct the jury to compare the nonparty's fault. See Mason v. Texaco Inc., 862 F.2d 242, 246 (10th Cir. 1988); Wooderson v. Ortho Pharm. Corp., 681 P.2d 1038, 1060 (Kan.), cert. denied, 469 U.S. 965 (1984); cf. Worden v. Tri-State Ins. Co., 347 F.2d 336, 340 (10th Cir. 1965) ("[I]f there is no evidence to support a claim of contributory negligence, it would be error to submit same to the jury, or if any evidence bearing on the claim of contributory negligence is such that men of reasonable minds would only reach the conclusion that contributory negligence was not present, then it would be error to submit to the jury the issue of contributory negligence.").

Under Kansas law, a claim of medical negligence is judged by the professional standards of "members of [the doctor's] profession and of his school of medicine in the community where he practices, or similar communities." Chandler, 574 P.2d at 138. Kansas law presumes that a physician or surgeon has carefully and skillfully treated a patient and does not infer negligence merely from an adverse result. See Savina v. Sterling Drug, Inc., 795 P.2d 915, 935-36 (Kan. 1990); Webb v. Lungstrum, 575 P.2d 22, 25 (Kan. 1978). The party who wishes to prove medical negligence bears the burden of showing that the doctor's acts were negligent and that the negligence caused the injury. See Savina, 795

P.2d at 935-36.

Since this is not a case where the lack of reasonable care would be apparent to the average layman, Kansas law requires expert testimony to establish that the accepted standard of medical care was breached before the issue of medical negligence may be presented to a jury. See id. at 936. Contrary to Defendants' assertions, neither of the two testifying physicians, Dr. Mitra or Dr. Harbin, testified that Dr. Mitra breached the applicable standard of care when treating Mr. Gust's femur. Therefore, after a thorough review of the record, we agree with the district court that there was not sufficient evidence to show that Dr. Mitra negligently treated Mr. Gust's femur.

With respect to Dr. Mitra's treatment of Mr. Gust's foot and ankle, there was some evidence of the medical community's standard of care and there was disputed evidence that the standard was breached. However, in a case like this, where "the existence of proximate cause is [not] apparent to the average layman from common knowledge or experience," expert testimony is required to prove causation. Bacon v. Mercy Hosp., 756 P.2d 416, 420 (Kan. 1988); see also Wozniak v. Lipoff, 750 P.2d 971, 975 (Kan. 1988) (stating that to prevail on claim of medical malpractice, plaintiff must establish that causal connection existed between breached duty and injuries sustained). Defendants produced no expert testimony that Dr. Mitra's treatment exacerbated Mr. Gust's foot and ankle

injuries or resulted in any harm to Mr. Gust.

Without expert testimony on the essential elements of Defendants' malpractice claims, the district court properly refused to allow the jury to consider those claims against Dr. Mitra, and it appropriately instructed the jury that no medical negligence existed.  See Hinds v. General Motors Corp., 988 F.2d 1039, 1046 (10th Cir. 1993); Brownlow v. Aman, 740 F.2d 1476, 1490 (10th Cir. 1984) ("Under federal law, an instruction is properly given if supported by competent evidence; only where there is sufficient evidence to support an issue or theory is the party offering an instruction entitled to have the instruction given."). Accordingly, we conclude that the court's refusal to instruct the jury to compare Dr. Mitra's alleged fault to that of Mr. Dighera or Mr. Jones and Willis Shaw was not erroneous.  See Worden, 347 F.2d at 340.

## III.

Defendants also assert that the district court erred by not permitting their accident reconstruction expert to testify at trial.  They contend that their expert's testimony was critical because it supported their allegation that Mr. Dighera was not traveling within the posted speed limit at the time of the accident.  "[T]he district court has broad discretion in determining whether or not to admit expert testimony, and we review a decision to admit or deny such testimony only for

-12-

abuse of discretion." Orth, 980 F.2d at 637. The admission of expert testimony in a federal trial is governed by Federal Rule of Evidence 702, which provides that, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. "Thus, the touchstone of [the] admissibility [of expert testimony] is [its] helpfulness to the trier of fact." Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 648 (10th Cir. 1991).

The court excluded Defendants' proposed reconstruction expert because it found that there was "sufficient testimony and other evidence from which the jury [could] draw its own conclusions regarding [Mr.] Dighera's speed and whether or not his negligence contributed to the accident," including the testimony of several eyewitnesses. R., Vol. I., Doc. 14 at 105-06. The court also suggested that the probative value of the expert's testimony would be outweighed by the danger of confusing the jury. We previously have held that it is not an abuse of discretion to exclude proffered expert testimony "'when the normal life experiences of the jury would permit it to draw its own conclusions . . . , based upon the lay testimony of eyewitnesses.'" See Getter v. Wal-Mart Stores, Inc., 66 F.3d 1119, 1124 (10th Cir. 1995) (citation omitted), cert. denied, 516 U.S. 1146 (1996); see

-13-

also Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994) (holding that when expert testimony is offered to explain a question the jury is capable of assessing for itself, the trial court may exclude the testimony because it would not assist the trier of fact). Although we believe the helpfulness of the accident reconstruction expert's testimony to be a close call, the district court did not abuse its discretion in excluding the testimony. See Corneveaux v. CUNA Mut. Ins. Group, 76 F.3d 1498, 1505 (10th Cir. 1996).

## IV.

Defendants contend that the district court erred by allowing an economist, Dr. Gary Baker, to testify to Mr. Gust's future economic losses because his testimony was not sufficiently reliable. Defendants' distortions of the evidence do not convince this court that the district court abused its discretion in allowing Dr. Baker's testimony. For instance, Defendants represent that, because Mr. Fagan, who was hired to replace Mr. Gust, was paid only $28,000 in a single tax year, Dr. Baker's testimony that Mr. Gust could have earned $44,000 per year could not be accurate and reliable. Significantly, Defendants do not report that Mr. Fagan worked on a contract basis only for about six or seven months of that year and took numerous vacations. After a thorough review of the record on appeal, we conclude that the court did not abuse its discretion in allowing

-14-

Dr. Baker's testimony.

## V.

Defendants also claim that the court violated Federal Rule of Evidence 701 in allowing an eyewitness, Mr. Charles Stark, to provide an opinion on Mr. Dighera's speed at the time of the accident. Rule 701 allows a lay witness to give an opinion that is rationally based on his own perception if that opinion is helpful to a clear understanding of a fact at issue. See Weese, 98 F.3d at 550; cf. Randolph v. Collectramatic, Inc., 590 F.2d 844, 848 (10th Cir. 1979) (noting that "persons of reasonable intelligence and ordinary experience are uniformly permitted to express opinions as to matters such as the speed of an automobile under their observation"). Further, the admission of lay opinion testimony is within the sound discretion of the trial court. See Getter, 66 F.3d at 1124. Because Mr. Stark testified that he had been following Mr. Dighera's pickup for some fourteen to fifteen miles prior to the accident, we hold that the district court did not abuse its discretion in allowing him to testify that, in his opinion, Mr. Dighera was traveling within the posted speed limit at the time of the accident.

## VI.

Defendants attempted to offer evidence of Plaintiffs' prior felony convictions on drug-related charges to impeach the credibility of both plaintiffs and to show that Mr. Gust's future earnings would be diminished by his criminal record. Mr. Gust was convicted of smuggling contraband into a penal institution and Mr. Dighera was convicted of methamphetamine possession and violating the Kansas Drug Stamp Law. Defendants argue that the district court erroneously ruled that this evidence was inadmissible. As noted above, we review the district court's evidentiary ruling for an abuse of discretion. See Robinson, 16 F.3d at 1086.

Defendants assert that the convictions were admissible under Federal Rules of Evidence 609 and 404(b). Rule 609 provides two alternatives for admitting convictions for the purpose of attacking the credibility of a witness. Addressing them in reverse order, we believe the evidence is not admissible under Rule 609(a)(2) because these crimes do not, per se, involve dishonesty or false statements. Defendants' attempts to characterize smuggling drugs into a penitentiary and failing to purchase drug tax stamps as acts indicating a propensity for fraud does not change the fact that these are convictions which are not, of themselves, probative of honesty. See Wilson v. Union Pac. R.R. Co., 56 F.3d 1226, 1230-31 (10th Cir. 1995) (stating that evidence of drug possession conviction is not highly relevant to issue of veracity); United States v. Mejia-

-16-

Alarcon, 995 F.2d 982, 988-89 (10th Cir.) (discussing the narrow types of crimes contemplated by Rule 609(a)(2)), cert. denied, 510 U.S. 927 (1993).

The alternative means by which criminal convictions may be admitted under Rule 609(a)(1) requires, in addition to a threshold length and severity of punishment, an application of the balancing test of Federal Rule of Evidence 403. If the danger of unfair prejudice, confusion of the issues, or misleading the jury substantially outweighs the evidence's probative value on the issue of credibility, the evidence can be excluded. See Fed. R. Evid. 403; Wilson, 56 F.3d at 1231. The court did not abuse its discretion in determining that the drug convictions were inadmissible under Rule 609(a)(1) because their probative value was substantially outweighed by the danger of unfair prejudice.

Defendants also assert that Plaintiffs' convictions were admissible under Rule 404(b) for a purpose other than challenging Plaintiffs' credibility, i.e., to bolster Defendants' contention that Mr. Gust overstated his damages. Defendants contend that Mr. Gust's prior conviction would limit his future employability and that Mr. Gust's employment in Mr. Dighera's business, D&D Proves It, would be at risk because of Mr. Dighera's incarceration. Testimony which is admissible under Rule 404(b) is still subject to exclusion pursuant to Rule 403. The district court considered the probative value of the evidence and determined that, without further evidentiary support as to how Mr. Dighera's impending incarceration or

Mr. Gust's criminal record would affect Mr. Gust's future earnings, admission of the drug-related convictions of either Plaintiff would unfairly prejudice the jury.

We agree that the reason for Mr. Dighera's absence from his business was not relevant to the question of Mr. Gust's damages and would be unfairly prejudicial. We see no abuse of discretion in the court's ruling that, if Defendants made a sufficient showing that Mr. Dighera's absence would likely diminish Mr. Gust's future earnings, the court would disclose the Plaintiffs' stipulation to Mr. Dighera's potential absence for an extended period. We also hold that the court's determination that the potential prejudice of Mr. Gust's conviction outweighed its potential probative value was not erroneous, particularly considering that the testimony of Mr. Gust's projected future earnings related to a job that he had been offered after his felony conviction. See Wilson, 56 F.3d at 1231 (noting that plaintiff's future income claim was based on his employment in positions not impacted by his conviction); cf. Meller v. Heil Co., 745 F.2d 1297, 1303 (10th Cir.), cert. denied, 467 U.S. 1206 (1984) (holding inadmissible decedent's drug paraphernalia, which was found at the accident scene, in wrongful death products liability action).

## VII.

Defendants allege several instructional errors as well. The district court's

decision to give a particular jury instruction is reviewed for an abuse of discretion.  See Summers v. Missouri Pac. R.R. Sys., 132 F.3d 599, 606 (10th Cir. 1997).  The jury instructions actually given by the court are reviewed *de novo* to determine whether, taken in their entirety, they correctly informed the jury of the governing law.  See id.  "The giving or refusal to give tendered jury instructions in a diversity action . . . is governed by federal law and rules. . . . However, a determination of the substance of a jury instruction in a diversity case is a matter of state substantive law."  Harvey v. General Motors Corp., 873 F.2d 1343, 1352 (10th Cir. 1989) (internal citations omitted).

Defendants argue that the court failed to instruct the jury that Mr. Gust also had asserted a claim against Mr. Dighera.  Although the district court refused to instruct the jury regarding Mr. Gust's cross-claim against Mr. Dighera exactly as Defendants desired, the jury instructions as a whole and the listing of Mr. Dighera on the verdict form for comparative negligence purposes clearly indicate that the jury was informed of the applicable law.  See R., Vol. II at 427-32, 440-57 (Jury Instr. Nos. 7, 9-11, 19-20, 21B, 22, 26).  The jury obviously understood the practical application of the cross-claim because they awarded a judgment against Mr. Dighera for a portion of Mr. Gust's damages.

Defendants also claim that the court erred in instructing that Willis Shaw was jointly liable for the percentage of fault attributable to Mr. Jones.  Because

Defendants admitted and stipulated that Mr. Jones was an employee of Willis Shaw acting in the scope and course of his employment at the time of the accident, we find no error in this joint liability instruction. See Williams v. Community Drive-In Theater, Inc., 520 P.2d 1296, 1302 (Kan. 1974). Defendants also contend that the court's limiting instruction concerning Mr. Gust's failure to meet with one of Defendants' witnesses, Mr. Bud Langston, was erroneous. We conclude that the court did not commit error by instructing the jury that it need not consider the reasons that Mr. Gust and Mr. Langston failed to meet. The instruction properly limited consideration of this extraneous matter. Additionally, we reiterate that, because we determined that there was insufficient evidence to support a malpractice claim against Dr. Mitra, the court properly instructed the jury that there was no medical negligence in this case and correctly refused to instruct the jury on Dr. Mitra's alleged comparative fault.

## VIII.

Defendants allege that the district court erred when it allowed a police officer to testify that he had asked Mr. Jones to take a blood alcohol test because of the bloodshot condition of Mr. Jones' eyes. After reviewing the record, we hold that the court did not abuse its discretion by admitting this testimony. To mitigate any potential prejudice, the officer testified to the negative .00 blood

-20-

alcohol test results, and the court instructed the jury that alcohol had no role in causing the collision and that it should completely ignore any evidence to the contrary. See R., Vol. II at 453.

**IX.**

In the first stages of this action, Mr. Dighera and Mr. Gust were represented by the same attorney. However, the cross-claim filed by Mr. Gust against Mr. Dighera created a direct conflict of interest between them. Because Mr. Gust and Mr. Dighera waived the conflict and requested continued joint representation, their joint attorney represented Mr. Dighera with regard to his claims for personal injuries and damages against Defendants, and a second attorney represented Mr. Dighera only in defending against the cross-claim. At trial, the district court limited the ability of Mr. Dighera's cross-claim attorney to examine the witnesses testifying to Mr. Gust's damages. Nonetheless, Defendants maintain that they were prejudiced by Mr. Dighera's representation by two attorneys while Mr. Dighera contends that the court erred by not allowing his counsel on the cross-claim to examine the witnesses testifying on the issue of Mr. Gust's damages. We review the court's decisions regarding the conduct of a trial, including decisions limiting the cross-examination of witnesses, under a deferential abuse of discretion standard. See Strickland Tower Maintenance, Inc.

-21-

v. AT&T Communications, Inc., 128 F.3d 1422, 1430 (10th Cir. 1997).

Our review of the record indicates that Mr. Dighera was represented in two capacities–as a plaintiff for his complaint and as a defendant for the cross-claim. We believe that it was a reasonable exercise of the court's managerial discretion to allow separate examinations of witnesses in relation to those two capacities. The court did not abuse its discretion in allowing both of Mr. Dighera's counsel to act on his behalf. Further, according to the record, the court required the attorney who represented Mr. Dighera on the cross-claim and the joint attorney who represented Mr. Gust and Mr. Dighera to split their allotted time for opening statements and closing arguments. In other words, Plaintiffs' joint attorney and Mr. Dighera's cross-claim attorney together were given the same amount of time for statements and arguments as were Defendants' attorneys. Thus, no prejudice stemmed from the court's decision to allow both of Mr. Dighera's counsel to utilize the allotted time.

We decline to consider Mr. Dighera's contention that the district court erred by refusing to allow his counsel on the cross-claim to examine witnesses testifying about Mr. Gust's damages. Because Mr. Dighera did not present this issue to the district court, he has waived its consideration on appeal. See Walker v. Mather, 959 F.2d 894, 896 (10th Cir. 1992). This is not the type of case which

warrants our application of the plain or manifest error analysis.[3]

## X.

Defendants contend that the court also erred in excluding what they characterize as a "judicial admission" by Mr. Dighera arising out of the pretrial order. At trial, Defendants' counsel asked Mr. Dighera whether he had previously denied that Mr. Gust had been injured or damaged to the extent claimed. Over his counsel's objection, Mr. Dighera testified that he knew for a fact that Mr. Gust had injuries and that he did not contend otherwise. To impeach Mr. Dighera's credibility, Defendants' counsel then attempted to introduce into evidence the pretrial order, which contained the following pertinent statements: "[Mr.] Dighera denies any allegations of fault set forth by the Defendants or any other party. [Mr.] Dighera also denies that the Plaintiff Gust has been injured or damaged to the extent claimed." R., Vol. I, Doc. 11 at 48-49. The court, however, refused to allow the admission of the pretrial order for substantive or impeachment purposes.

The pretrial order in this case contains separate sections setting forth the

---

[3]We note that, even if Mr. Dighera had preserved the issue for appeal, the court did not abuse its discretion in limiting the cross-claim attorney's cross-examination to certain witnesses. That Defendants vigorously pursued the issue of Mr. Gust's damages further indicates that Mr. Dighera was not prejudiced by the court's exercise of its discretion.

legal contentions and theories of each party.  In some of those sections, the legal contentions and theories of the parties are interspersed with admissions of fact.  For example, the following statement combines an admission of fact with Mr. Jones' legal contention about fault:  "Mr. Jones admits that the accident is partially his fault, but notes that Mr. Dighera could have avoided the accident entirely."  R., Vol. I., Doc. 11 at 49.  We agree with the district court that the statement at issue in this case is purely a legal contention or theory set forth by Mr. Dighera and does not contain any admission of fact.  Therefore, the court's refusal to admit this statement and the entire pretrial order into evidence was not erroneous.

**XI.**

Defendants suggest that the district court erred when it did not grant their request for a continuance or preclude a portion of Mr. Gust's economic damages to sanction Mr. Gust for withholding discoverable information.  We review the court's denial of a motion for continuance, see United States v. Gutierrez, 48 F.3d 1134, 1138 (10th Cir.), cert. denied, 515 U.S. 1151 (1995), and its decision concerning sanctions, see G.J.B. & Assocs., Inc., v. Singleton, 913 F.2d 824, 825 (10th Cir. 1990), for an abuse of discretion.

After reviewing the record, we hold that the court did not abuse its

discretion by choosing to impose other sanctions suggested by Defendants and by refusing to continue the trial or deny Mr. Gust's claim for economic damages. Mr. Gust was prohibited from offering any evidence concerning the undisclosed information, see R., Vol. III, Doc. 52 at 624, and the court imposed monetary sanctions against him, see id., Vol. II, Doc. 51. The court's action was soundly within its discretion.

## XII.

Mr. Dighera asserts that the district court erred in denying his motion for a directed verdict on Mr. Gust's cross-claim against him at the close of Mr. Gust's case.[4] Mr. Dighera contends that the court misinterpreted whether Kansas law requires a co-plaintiff to prove a case against the other co-plaintiff who is also a cross-claim-defendant. We review *de novo* the district court's denial of a motion for directed verdict in a diversity case. See Conoco, Inc. v. ONEOK, Inc., 91 F.3d 1405, 1407-08 (10th Cir. 1996). In reviewing the court's ruling on a directed verdict, we cannot substitute our judgment for that of the jury. See Whalen v. Unit Rig, Inc., 974 F.2d 1248, 1251 (10th Cir. 1992), cert. denied, 507

---

[4]We are cognizant of the fact that pursuant to Federal Rule of Civil Procedure 50 a motion for a directed verdict is now a motion for judgment as a matter of law. For the sake of simplicity, we will continue to use Plaintiff's directed verdict terminology in this opinion.

U.S. 973 (1993). This aphorism contemplates that a directed verdict is warranted only if the evidence and all inferences point in one direction. In other words, when there is some evidence against a movant, the question must go to a jury. See Oja, 111 F.3d at 792; Grasmick v. Otis Elevator Co., 817 F.2d 88, 90 (10th Cir. 1987).

As we stated above, the Kansas comparative fault scheme is clearly intended to provide an opportunity for a jury to hear a comprehensive presentation of the facts and then to determine fault among the parties accordingly. See Kan. Stat. Ann. 60-258a. Kansas courts consistently interpret their comparative negligence scheme to require that negligence actions definitively dispose of the fault of each potential tortfeasor. See Hardin, 691 F.2d at 455 ("[W]e think Kansas has opted for broad jury latitude and good sense in the interest of what it considers the higher value of settling injury disputes in one action."); Mick v. Mani, 766 P.2d 147, 158 (Kan. 1988) ("The one-action rule is not an extension of the doctrine of res judicata but the result of legislation. . . . [T]he legislature intended that henceforth all negligence claims arising out of one occurrence must be determined in one action."). Under this scheme, "every party has a right to cross-claim against any other party to the lawsuit," and all parties "who are properly served are bound by the adjudication of the percentage of causal negligence." Chavez v. Markham, 889 P.2d 122, 126 (Kan. 1995). Kansas

Statute Annotated § 60- 250(b) provides that "[d]ecisions on motions for directed verdict by parties joined pursuant to subsection (c) of K.S.A. 60-258a and amendments thereto[] shall be reserved by the court until all evidence has been presented by any party alleging the movant's fault." Mr. Dighera asserts that he was not added as a party pursuant to section 60-258a(c) and that, therefore, section 60-250(b) does not apply to him.

If Mr. Dighera had been made a defendant in the case by Willis Shaw and Mr. Jones pursuant to section 60-268a(c), a motion for a directed verdict could not be considered by the judge until the close of all of the evidence. However, we agree with the district court that "it does not matter whether [Mr.] Dighera was brought into the lawsuit pursuant to K.S.A. 60-258a(c)," and that "a directed verdict would be inappropriate until the defendants finished offering evidence. The defendants [had] an independent right to assert [Mr.] Dighera's liability and [would] be bound by the determination of fault." R., Vol. I, Doc. 14 at 98. Moreover, the court did not err in determining that Mr. Dighera also "[would] be bound by the jury's determination of fault and liable to [Mr.] Gust for his share of the damages." Id.

We acknowledge the wisdom of the court's prudent decision to let the jury hear all of the potential evidence and apportion fault among the parties. Given the adversarial nature of American jurisprudence, we believe the law of

comparative negligence requires that all potentially liable parties receive a full hearing on the purported negligence of other potential tortfeasors before a jury may adjudicate fault. The purpose of the comparative fault statutes would have been thwarted if the court did not allow Mr. Gust to recoup the full measure of his damages from all tortfeasors or if the jury were not allowed to consider the claims made against all parties prior to reaching a verdict. Therefore, we see no error in the district court's decision to deny Mr. Dighera a verdict in his favor before Defendants, the parties with the greatest interest in establishing his liability, had an opportunity to present their evidence. See Oja, 111 F.3d at 792 (granting a directed verdict is improper when there is evidence upon which the jury could properly find for the non-moving party); Hurd v. American Hoist & Derrick Co., 734 F.2d 495, 498-99 & n.3 (10th Cir. 1984).

## XIII.

Finally, having considered Plaintiff-Appellee Gust's motion to supplement the record on appeal and Defendants-Appellants' motion to strike Mr. Gust's brief and supplemental appendix, and the responses thereto, we deny both motions. For purposes of this appeal, this court considered no evidence or argument not raised or received in the district court.

**AFFIRMED**.