**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 25 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MARLO MARQUEZ,

      Plaintiff-Appellant,

v.

THE CITY OF ALBUQUERQUE and
OFFICER ANDREW LEHOCKY, both in
his official capacity as a police officer and
individually,

      Defendants-Appellees.

No. 02-2294

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-01-445 WWD/LFG)

---

Sam Bregman (Amy G. Archibeque with him on the brief), The Bregman Law Firm, P.C.,
Albuquerque, New Mexico, for Plaintiff-Appellant.

Luis Robles (Christina Anaya with him on the brief) French & Associates, Albuquerque,
New Mexico, for Defendant-Appellee Andrew Lehocky.

Kathryn Levy, Deputy City Attorney, City of Albuquerque, Albuquerque, New Mexico,
on the brief for Defendant-Appellee City of Albuquerque.

---

Before **KELLY, HOLLOWAY** and **HARTZ**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

This is an appeal of a judgment on a jury verdict for the Defendants in a § 1983 case alleging the use of excessive force to effectuate an arrest following a high-speed chase. Plaintiff, Marlo Marquez, was a passenger in a car that was involved in a high-speed police chase that started because the police believed the car contained burglary suspects. At the conclusion of the chase, Plaintiff was apprehended by Defendant Lehocky's police dog. Plaintiff sued, claiming the use of the dog constituted excessive force in violation of Plaintiff's constitutional rights.

After a jury verdict and judgment for the Defendants, Plaintiff appeals. Specifically, Plaintiff avers five points of error by the district court: (1) The refusal to grant Plaintiff's motion for judgment notwithstanding the verdict; (2) The refusal to allow Plaintiff's expert to testify; (3) The refusal to hold an evidentiary hearing to determine whether the jury was unduly influenced by extraneous prejudicial information; (4) The refusal to have an exhibit, that was inadvertently left in the courtroom, taken to the jury during deliberations; (5) The dismissal of claims against the City of Albuquerque on the basis of the jury verdict. We find no error and AFFIRM the judgment.

## I

### Facts

At approximately 10 p.m. on the evening of August 10, 1999, Albuquerque police responded to a report of a residential burglary. When they arrived at the scene, a witness

described two suspects, a 17 year old Hispanic male 5'4" tall and 145 lbs, and a tall, thin, and bald African-American male who was approximately 20 years old. The witness described the car the suspects used as a large, silver, older model vehicle and provided the license plate number, which belonged to a 1995 silver Pontiac. When the police arrived at the address of the registered owner of this car, they found no one home.

While this was going on, Plaintiff Marquez was walking home. She was offered a ride by an acquaintance, Cynthia Perkins, which she accepted. Shortly thereafter, the police attempted to pull over the vehicle for a non-functional license plate lamp. Perkins refused to stop and a high-speed chase ensued. During this chase, officers were informed that the vehicle they were chasing was involved in a burglary earlier that night. The chase concluded when the vehicle, driven by Perkins, struck a wall.

The first officer at the scene was Defendant Lehocky. Lehocky testified that Marquez exited the car from the passenger side door, ignored Lehocky's command to stop and attempted to flee the scene. Lehocky ordered his police service dog, Bart, to apprehend the suspect. Bart complied and latched firmly onto Plaintiff Marquez. Meanwhile, Perkins, who had briefly exited the car, was now back in the car attempting to drive off. Lehocky then ordered Marquez, with Bart still firmly attached to her, away from the rear of the car. By this time, Officer Heshley had arrived and ordered Perkins out of the vehicle. Perkins complied and was taken into custody by Officer Heshley. Simultaneously, Defendant Lehocky removed Bart from Plaintiff Marquez and took her

in custody.

On the basis of these events, Marquez sued Lehocky and the City of Albuquerque under § 1983, alleging the force used by Defendant Lehocky in effectuating her arrest was excessive and therefore violated her constitutional rights. The jury returned a verdict for the Defendants and Plaintiff now appeals.

## II

*Jurisdiction*

Jurisdiction in this case is premised on the federal question raised by Marquez regarding a deprivation of rights and privileges secured to her by the Constitution and laws of the United States, including the Fourth and Fourteenth Amendments within the meaning of 42 U.S.C. §1983. Marquez filed her §1983 claim following her arrest by Officer Lehocky, alleging that the force used by Officer Lehocky in effectuating her arrest was excessive and in violation of her constitutional rights. Appellate jurisdiction in this Court is provided by 28 U.S.C. §1291. The District Court of New Mexico entered its final judgment on October 4, 2002, having conducted a trial on the merits that resulted in a jury verdict for Defendants.

## III

*Discussion*

**A**

*Denial of Judgment as a Matter of Law*

Marquez's § 1983 suit alleged that Lehocky used excessive force against her by means of his police service dog, Bart, during her arrest. Appellee's Supp. App. at 27. The jury disagreed and returned a verdict for the Defendants. App. at 288. On appeal, Marquez argues the district court erred in denying her judgment as a matter of law. In other words, Marquez argues the evidence is such that the only rational conclusion is that Lehocky used excessive force in effectuating her arrest. We disagree.

A court should grant a party's motion for judgment as a matter of law only if "the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion." *Conoco Inc. v. ONEOK, Inc.*, 91 F.3d 1405, 1407 (10th Cir. 1996). In weighing the proof, this court should "not weigh the evidence, pass on the credibility of witnesses, or substitute [its] judgment for that of the jury." *Questar Pipeline Co. v. Grynberg*, 201 F.3d 1277, 1284 (10th Cir. 2000).

We analyze whether the force used to effectuate an arrest violates an individual's Fourth Amendment rights under the "objective reasonableness" standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 388 (1989). A "court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002) (quoting *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001)). Factors to consider in assessing whether the force used was reasonable include: the alleged crime's

severity, the degree of potential threat that the suspect poses to an officer's safety and to others' safety, and the suspect's efforts to resist or evade arrest.[1] *Id.*

There are four categories of evidence presented at trial that support the jury's conclusion that Lehocky was objectively reasonable in ordering his police service dog to apprehend Marquez. First, there was substantial evidence presented at trial to support Lehocky's belief at the time of the arrest that he was faced with two potentially armed burglary suspects. Officer Heshley testified that she broadcast over the police radio that the silver Pontiac in which Marquez was a passenger was involved in a burglary. App. at 193. Lehocky testified that the two occupants of the Pontiac, Perkins and Marquez, appeared to match the descriptions of the robbery suspects he heard over the police radio. *Id.* at 163, 167. Lehocky's testimony is supported by the fact that Perkins had brown hair and was wearing a blue shirt like one of the suspects and Marquez was African-American like the other. *Id.* at 163, 167. Moreover, Lehocky testified that between one quarter and one half of all robbery suspects are armed. *Id.* at 149-50. Therefore, there was substantial evidence presented at trial that, at the time of the arrest, Lehocky reasonably believed Marquez was a potentially armed robbery suspect.

---

[1] If the use of a police dog is considered deadly force, then Lehocky would have used reasonable force only if it is shown that Marquez posed "an immediate threat to police officers or civilians." *Tennesee v. Garner*, 471 U.S. 1, 11 (1985). While we have not addressed whether use of a police dog is properly considered deadly force, every circuit to consider the question has held that it is not. *Jarrett v. Town of Yarmouth*, 331 F.3d 140, 148-49 (1st Cir. 2003); *Robinette v. Barnes*, 854 F.2d 909 (6th Cir. 1988); *Vera Cruz v. City of Escondido*, 139 F.3d 659, 663 (9th Cir. 1997). Neither party raised this issue, and for the purposes of this case, we assume that use of a police dog is not deadly force *ipso facto*.

Second, the high-speed chase that immediately preceded the arrest indicated Marquez, who was reasonably believed to be the burglary accomplice of the driver, was a danger to the public and was willing to evade arrest. That chase ended with the vehicle crashing into a wall, *id.* at 161, after leading police on an extended and reckless high speed chase that included excessive speed, *id.* at 197, the running of several stop signs, *id.* at 195-97, the running of several red lights, *id*. at 197, and high-speed weaving in a residential neighborhood, *id.* at 159-60. Therefore, there was substantial evidence presented at trial to support Lehocky's belief that failing to apprehend the occupants of the silver Pontiac would endanger the public safety and allow the suspects to evade arrest.

Third, at the conclusion of the high speed chase, Marquez attempted to evade arrest by running away from Lehocky and trying to climb a fence. *Id.* at 134, 136. Finally, at the time of the arrest, Lehocky was the only officer at the scene and was required to secure two felony suspects. *Id.* at 136.

These pieces of evidence portray a tense and rapidly evolving situation in which a lone officer was confronted with two potentially armed robbery suspects who had just led police on a reckless high-speed chase. In this context, a jury could rationally reach the conclusion that Lehocky, making a "split-second judgment[] in [a] difficult circumstance[]," acted reasonably when, after warning Marquez to halt, he ordered his police service dog to apprehend Marquez. *Olsen*, 312 F.3d at 1314. Accordingly, the district court did not err in denying Marquez judgment as a matter of law.

**B**

*Exclusion of the testimony of plaintiff's expert witness*

Marquez sought to have her expert, Dr. George Kirkham, testify at trial that the use of a police dog is objectively reasonable only where there is evidence of an "articulable threat to" the safety of either the officer or a bystander. Appellee's Supp. App. at 75. Kirkham's testimony was based upon his theory that a police officer should always use the minimum amount of force and, therefore, that any use of force beyond the minimum is, *ipso facto*, unreasonable. *Id.* at 80. Kirkham was also to testify that Lehocky's actions in this case "violated well established law enforcement standards." *Id.* at 75. In sum, Kirkham's testimony comprised two parts: that the only reasonable use of force is the minimum use of force and what constituted well established law enforcement standards.

Prior to trial, the district court granted Lehocky's motion in limine to exclude this testimony by Kirkham as irrelevant and confusing under Fed. R. Evid. 402 and 403. On appeal, Marquez argues Kirkham's testimony should have been admitted since it would have been helpful to the jury in determining whether Lehocky used a reasonable amount of force. We disagree.

"We review the district court's evidentiary rulings, including its decision to admit or deny expert testimony, for an abuse of discretion." *Gust v. Jones*, 162 F.3d 587, 592 (10th Cir. 1998). Here, the district court held the testimony regarding the minimum use of force was irrelevant on the ground that the Fourth Amendment does not require police

officers to use the least intrusive amount of force. Similarly, the district court held the testimony regarding law enforcement standards was both irrelevant and confusing on the ground that the violation of such standards is not *ipso facto* a Fourth Amendment violation. As both of these grounds are supported by well established precedent, it was not an abuse of discretion to exclude Kirkham's testimony.

As the district court correctly noted, the Fourth Amendment "does not require [police] to use the least intrusive means in the course of a detention, only reasonable ones." *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994). Similarly, "violations of state law and police procedure generally do not give rise to a 1983 claim" for excessive force. *Romero v. Board of County Comm'rs*, 60 F.3d 702, 705 (10th Cir. 1995); *See also Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995) (holding that "violation of a police department regulation is insufficient for liability under section 1983" for excessive force). Both of these principles of our Fourth Amendment jurisprudence stem from the proper perspective from which to evaluate the conduct of a police officer - that "of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Olsen*, 312 F.3d at 1314. Together, they prevent the courts from engaging in "unrealistic second guessing of police officer's decisions." *Melendez-Garcia*, 28 F.3d at 1052.

Here, the only issue before the jury was whether Lehocky acted as a "reasonable officer" when he ordered his police dog to apprehend Marquez. In making this

determination, the issues of whether Lehocky used the minimum amount of force to apprehend Marquez and whether Lehocky violated some "well established police procedure" are only tangentially related. This is because even if it found Lehocky used more then the minimum amount of force necessary[2] and violated police procedure, the jury could nonetheless find he acted reasonably. *Melendez-Garcia*, 28 F.3d at 1052; *Romero*, 60 F.3d at 705. Accordingly, the district court did not abuse its discretion in excluding the testimony of Kirkham.

## C

### *The "expert" juror*

During deliberations, a juror, Susan Weller, sent the trial judge a note stating that one of the jurors was holding herself out as an expert in police dog training. In addition, Weller stated in the note that the juror made three assertions during deliberations: (1) Police dogs do not bite unless the suspect is fleeing; (2) The injuries suffered by Marquez from the bite were not serious; and (3) Police dogs do not bite the first part of the body they come across. App. at 271.

After learning of this note, Marquez's attorney made an oral motion for an evidentiary hearing pursuant to Fed. R. Evid. 606(b) to determine whether extraneous information was improperly influencing the jury. Marquez's attorney also mentioned that, in his recollection, the juror had stated during voir dire she "did not have anything to

---

[2] I.e., walking up to Marquez and arresting her by hand.

do with the training of animals." App. at 278. The district court orally denied this motion on the ground that jurors are allowed to refer to their own personal experiences. On appeal, Marquez argues an evidentiary hearing should have been granted for two reasons: (1) to investigate whether extraneous information was improperly influencing the jury and (2) to determine whether the juror had lied during voir dire. We find neither argument for an evidentiary hearing is persuasive.

**i**

*Extraneous information*

"[A] juror may not testify in impeachment of the verdict . . . except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Fed. R. Evid. 606(b). "[T]he decision whether to grant or deny a hearing on a claim that a juror was improperly exposed to extraneous information is vested in the broad discretion of the district courts, and we will review the denial of a request for such a hearing only for an abuse of discretion." *United States v. Davis*, 60 F.3d 1479, 1483 (10th Cir. 1995).

Here the alleged "extraneous prejudicial information" was the juror's personal experience with training police dogs. A juror's personal experience, however, does not constitute "extraneous prejudicial information." 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 606.03(1)(b) (Joseph M. McLaughlin, ed.,

-11-

Matthew Bender 2d ed. 2004). As the Second Circuit stated, "the inquiry is not whether the jurors "became witnesses" in the sense that they discussed any matters not of record, but whether they discussed specific extra-record *facts* relating to the defendant, and if they did, whether there was a significant possibility that the defendant was prejudiced thereby." *United States ex rel. Owen v. McMann*, 435 F.2d 813, 818 n.5 (2nd Cir. 1970) (emphasis and quotation marks in original); *see also Hard v. Burlington N. R.R. Co.*, 870 F.2d 1454, 1462 (9th Cir. 1989) (holding that a juror's personal familiarity with reading x-rays was not extraneous prejudicial information).

Therefore, even if an evidentiary hearing were granted, the juror would not have been competent to testify as there was no credible allegation that the juror brought into the deliberations "extraneous prejudicial information" as to render her competent to testify under Fed. R. Evid. 606(b). Accordingly, any evidentiary hearing on this matter would have been futile and the district court did not abuse its discretion in refusing to hold such a hearing.

## ii

### *Voir dire*

A party is entitled to a new trial if that party can first show that a juror "failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). The denial of an evidentiary

hearing to investigate juror dishonesty during voir dire is reviewed for an abuse of discretion. *United States v. Bradshaw*, 787 F.2d 1385, 1390 (10th Cir. 1986). Here, Marquez argues that the juror failed to "disclose the significant information regarding her true expertise in the area of police dog training and behavior . . . ." Brief for the Appellant at 19. The record, however, reveals no such failure to disclose.

During voir dire, the "expert" juror stated, without being asked, that her family in the late 1970s through the early 1980s trained police dogs and that her family "trained dogs and worked with dogs through [her] entire life." App. at 26. Marquez's attorney then asked what the juror's role in the training was. *Id.* She responded that her own participation was "not much" and that the training was performed by her sister and father. *Id.* Notably, Marquez's attorney asked the juror only about her *participation* in dog training and never about her *knowledge* of dog training. *Id.* Therefore, the juror did not fail to honestly answer any question posed to her during voir dire when she did not disclose her knowledge of dog training techniques. The reason that the juror's specialized knowledge did not come to light, therefore, was a failure by Marquez's attorney to fully examine the juror during voir dire, rather then any misrepresentation by the juror. Accordingly, the district court did not abuse its discretion in denying an evidentiary hearing on this matter.

**D**

*Refusing to have an exhibit delivered to the jury*

The district court admitted in evidence a videotape of the actual training of police dogs. The tape showed an example of dogs using the "guard and bark" operation–where a dog circles the suspect but does not bite unless the suspect tries to exit the circle–and dogs chasing and biting suspects on command. At the conclusion of the trial, the district court sent all the exhibits in with the jury except the audio and video tape exhibits. The record does not disclose whether this was intentional or inadvertent.

The fact that these exhibits were not with the jury during their deliberations came to light after Juror Weller sent a note regarding the "expert" testimony of a fellow juror to the district court. Marquez then requested that the videotape be sent into the jury room. The district court denied the request because, in the court's opinion, sending the videotape after the jury had been deliberating for a number of hours and just after the receipt of Juror Weller's note would be poor timing. The district court also made clear that, were the jury to request the videotape, the court would reconsider sending the exhibit to the jury. The jury never made such a request.

On appeal, Marquez argues that the district abused its discretion in failing to send the videotape to the jury because the video would have "assisted the jury on the issue of dog training" and would have "mitigated the negative consequences of the 'expert' juror." Brief for the Appellant at 22. We disagree.

"The transmittal of exhibits to the jury is ordinarily a matter within the discretion of the trial court and will not be reversed in the absence of clear prejudice to the

-14-

defendants." *United States v. De Hernandez*, 745 F.2d 1305, 1308 (10th Cir. 1984). In this case, Marquez fails to establish she suffered clear prejudice as a result of the district court's actions for three reasons.

First, the district court did not send *any* audio or video tapes to the jury and did not selectively exclude only Plaintiff's evidence–a defense audiotape of Plaintiff's post-arrest interview was also excluded. App. at 279-80. Therefore, this is not a case where the district court selectively disadvantaged Marquez. Second, the tape was played during Plaintiff's case in chief and no juror requested the tape during deliberations. *Id.* at 128. Therefore, the jury was aware of the tape and its content during its deliberation. Finally, the program on the tape was a commercial, designed to sell trained dogs, and did not refer specifically to any facts of the case at hand. *Id.* Therefore, the probative value of the tape was minimal.

In short, even with the most generous of allowances, Marquez fails to establish that she suffered "clear prejudice" as a result of the district court's ruling. Accordingly, the district court did not abuse its discretion when it declined to send the promotional video to the jury during deliberations.

**E**

*Dismissal of claims against the City of Albuquerque*

After the jury verdict for Lehocky, the district court dismissed all claims of Marquez against the City of Albuquerque since its liability was derivative from Lehocky.

-15-

*Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). On appeal, Marquez argues this dismissal should be reversed since the jury verdict absolving Lehocky of liability was tainted by reversible error. For the reasons detailed above, we find no reversible error in the trial and, therefore, the dismissal of claims against the City of Albuquerque was not in error.

**IV**

*Summary*

For the foregoing reasons, we conclude the following: (1) The district court appropriately denied Marquez judgment as a matter of law on her § 1983 claim alleging excessive force by Lehocky; (2) The district court did not err in excluding the testimony of Marquez's expert, Kirkham, as irrelevant and confusing; (3) The district court did not err in denying Marquez an evidentiary hearing in respect to alleged misconduct by the so-called expert juror; (4) The district court did not err in declining to send the promotional video to the jury; and (5) The district court appropriately dismissed Marquez's claims against the City of Albuquerque.

Accordingly, the judgment for Lehocky on the verdict is AFFIRMED.