**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOSEPH M. L. GARDNER,
　　　　　*Petitioner-Appellant,*

v.

JON OZMINT, Commissioner, South
Carolina Department of Corrections,
　　　　　*Respondent-Appellee.*

No. 06-28

Appeal from the United States District Court
for the District of South Carolina, at Rock Hill.
Terry L. Wooten, District Judge.
(0:05-cv-01647-TLW)

Argued: September 27, 2007

Decided: December 19, 2007

Before WILKINSON, MOTZ, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Wilkinson and Judge Gregory joined.

## COUNSEL

**ARGUED:** Keir Michael Weyble, BLUME, WEYBLE & NORRIS,
L.L.C., Columbia, South Carolina, for Appellant. William Edgar
Salter, III, Senior Assistant Attorney General, OFFICE OF THE
ATTORNEY GENERAL, Columbia, South Carolina, for Appellee.
**ON BRIEF:** John H. Blume, CORNELL LAW SCHOOL, Ithaca,
New York, for Appellant. Henry Dargan McMaster, Attorney Gen-

eral, John W. McIntosh, Chief Deputy Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL, Columbia, South Carolina, for Appellee.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Joseph Gardner, convicted of murder and kidnapping and sentenced to death by a South Carolina court, appeals the district court's denial of his petition for federal habeas relief. We granted a certificate of appealability on four issues: (1) did Gardner suffer a violation of his right to a fair trial before an impartial jury; and was Gardner denied effective assistance of counsel by the failure of his trial attorneys to (2) exercise a peremptory challenge to remove a juror; (3) present his mitigation evidence in a more accurate and compelling manner during sentencing; or (4) object to, rather than facilitate, the admission of highly inflammatory testimony that racial animus motivated Gardner's crimes. For the reasons that follow, we affirm the district court's denial of habeas relief.

I.

On the basis of strong evidence, including the detailed testimony of co-defendants, a South Carolina jury convicted Gardner, an African-American man, of the December 30, 1992, kidnapping and brutal murder of Melissa McLaughlan, a Caucasian woman. The jury also found the aggravating circumstances of criminal sexual conduct, kidnapping, and physical torture and recommended that Gardner receive a death sentence, which the state court then imposed. Following Gardner's unsuccessful direct appeal, *State v. Gardner*, 505 S.E.2d 338, 339 (S.C. 1998), the Supreme Court denied certiorari, *Gardner v. South Carolina*, 526 U.S. 1022 (1999). Gardner next petitioned for post-conviction relief in state court. The state post-conviction relief court ("PCR court") denied his claims for relief, as did the Supreme Court of South Carolina. Gardner then filed this petition for a writ of habeas corpus in federal court, pursuant to 28 U.S.C.A. § 2254 (West 2006 & Supp. 2007). The district court denied

relief without ruling on Gardner's application for a certificate of appealability. We granted Gardner a certificate of appealability on the four issues enumerated above.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.A. § 2254(d), requires a federal court to defer to a state court judgment on the merits when considering a petition for habeas relief. Thus, a federal court cannot grant habeas relief on any claim adjudicated on the merits by the state court unless the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*

## II.

Gardner contends initially that the seating of a juror, who he claims knowingly withheld disqualifying information, violated his right to a fair trial before an impartial jury, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. Gardner asserts that during *voir dire* the juror intentionally withheld her belief that her son had been murdered, because she knew that disclosure of that belief might have established cause for her removal from the jury.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI; *see Irvin v. Dowd*, 366 U.S. 717, 721-22 (1961) (holding that the Fourteenth Amendment requires that States guarantee a fair trial by a panel of impartial jurors). The Supreme Court has interpreted this text to mean that a criminal defendant has a constitutional right to a jury free from prejudice and "capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). To protect that right, a trial judge must be "ever watchful to prevent prejudicial occurrences," *id.*, and therefore must conduct *voir dire* in a manner that adequately identifies unqualified or potentially biased jurors, *see Morgan v. Illinois*, 504 U.S. 719, 729-34 (1992).

To establish entitlement to a new trial because of alleged juror dishonesty during *voir dire*, a defendant "must first demonstrate that a

juror failed to answer honestly a material question . . . and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). This test applies "equally to deliberate concealment and to innocent non-disclosure." *Conner v. Polk*, 407 F.3d 198, 205 (4th Cir. 2005).

The PCR court rejected Gardner's claim of juror deceit. The court found that defense counsel could have questioned the juror about the impact of violent crimes on her life, but did not do so.[1] Thus, the juror never "failed to answer honestly a material question," as required by *McDonough*, 464 U.S. at 556. Moreover, relying on the juror's affirmation during *voir dire* that she could grant a fair trial to both sides, the PCR court found her not to be biased against any party. At the PCR hearing, the juror also testified regarding her earlier statement to defense investigators that "if [she] had told [the court] about [her] son's killing . . . [she] would not have been allowed on [the] jury." Based on her subsequent testimony at the post-conviction relief hearing and the context of her earlier statement, the PCR court found that her statement did not "reflect bias or intentional concealment," but only "after-the-fact . . . surprise" that defense counsel did not question her on this point. The PCR court found that the juror's truthful demeanor supported this conclusion. The PCR court also noted that the juror credibly testified at the PCR hearing that, if asked, she would have disclosed her views regarding her son's death at *voir dire*, but she did not volunteer them because she did not believe them "important," as she had no proof to back them up. On the basis of these findings, the PCR court concluded that Gardner failed to satisfy the first prong of the *McDonough* test and so denied Gardner's request for a new trial.

We cannot conclude that, in rejecting Gardner's claim, the PCR court acted contrary to, or unreasonably applied, clearly established Supreme Court precedent. *See* 28 U.S.C.A. § 2254(d). Like the state court, we do not believe that the record demonstrates that the juror

---

[1]The PCR court also denied relief on a claim of ineffective assistance based on counsel's failure to inquire about potential bias because Gardner suffered no prejudice from this failure. Gardner does not appeal that ruling.

failed to answer honestly any *voir dire* question. *See McDonough*, 464 U.S. at 556. Nor does the record suggest that the juror held any actual or implied bias against any party such that a "correct response would have provided a valid basis for a challenge for cause." *Id.*; *see also Phillips*, 455 U.S. at 222 (O'Connor, J., concurring) (explaining that the doctrine of implied bias should be applied only in limited and "extreme" circumstances); *United States v. Fulks*, 454 F.3d 410, 432-33 (4th Cir. 2006) (rejecting a claim of implied bias when a juror inadvertently failed to disclose her husband's murder).

Thus, we must reject Gardner's contention that the state court unreasonably applied or acted contrary to established federal law in concluding that Gardner failed to demonstrate juror bias or partiality.

### III.

Gardner's remaining claims all rest on an asserted denial of his Sixth Amendment right to effective assistance of counsel.

To prove a Sixth Amendment violation and succeed on a claim of ineffective assistance, a defendant must first demonstrate "that counsel's performance was deficient" in that it "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The defendant must next establish that the "deficient performance prejudiced the defense." *Id.* at 687. To demonstrate prejudice, he must show that there is a "reasonable probability" that, absent the alleged deficiency, "the result of the proceeding would have been different." *Id.* at 694.

Gardner raises three ineffective assistance contentions. He challenges the conduct of his lawyers during *voir dire*, their preparation of mitigation evidence during the sentencing phase of his trial, and their handling of the testimony of two prosecution witnesses who stated that racial animus motivated Gardner's crimes. The state PCR court adjudicated each of these claims on the merits and determined in each instance that Gardner had failed to establish ineffective assistance. We consider each of these ineffective assistance claims in turn.

### A.

The first claim concerns the alleged bias of a second juror. Gardner contends that defense counsel rendered constitutionally ineffective

assistance by failing to exercise a peremptory strike to remove this juror after the juror "twice admitted during *voir dire* that she could not be completely impartial." Brief of Appellant at 32. He characterizes the juror's ultimate assertion that she *could* decide the case impartially as mere "acquiescence" to the demands of the court and trial counsel that she issue a firm statement of impartiality. *Id.* at 34.

Although this juror admitted early in *voir dire* that she had, "to a certain extent," formed an opinion about the case based on television coverage, after apparent hesitation, she also averred that she could "lay aside any opinion [she had] formed and decide this case based solely on the evidence and testimony presented in this courtroom." When questioned by defense counsel regarding her initial hesitation, the juror answered, "I can tell you I would try and I feel like that I could be open-minded, but as far as 100 percent, I can't." Defense counsel asked once more whether the juror could "render a fair and impartial verdict" based on only the evidence presented in court, to which the juror then replied, "I feel that for certain that I could." Following this exchange, defense counsel challenged that juror for cause, but the trial judge denied the challenge and held the juror qualified to serve. Defense counsel did not exercise a peremptory challenge; the juror therefore served on the jury that convicted Gardner and recommended the death penalty.

The PCR court examined Gardner's allegations of counsel's deficiency for failure to exercise a peremptory challenge to strike the juror and concluded that Gardner had not made the showing required by *Strickland*. The court found that counsel's decision not to use a peremptory challenge "was a tactical decision," which neither demonstrated counsel's deficiency nor prejudiced Gardner. The court noted that only two jurors had been seated when defense counsel had to decide whether to exercise a peremptory challenge with respect to this juror, and the defense already had used three of its ten allotted peremptory challenges. The PCR court concluded that counsel could reasonably have decided to forego the peremptory challenge of this juror and reserve its remaining peremptory challenges for other, potentially more problematic, jurors.

On habeas review, federal courts generally accord "particular deference" to the judgment of trial counsel during *voir dire*. *Hughes v.*

*United States*, 258 F.3d 453, 457 (6th Cir. 2001). The record in this case well supports the state PCR court's determination that Gardner did not satisfy the performance prong of *Strickland*. We find entirely plausible the state court's characterization of defense counsel's choice as "tactical." Defense counsel's conduct easily falls within "an objective standard of reasonableness" and conforms with "prevailing professional norms." *Strickland*, 466 U.S. at 688.

The PCR court also determined that removal of this juror would not have changed the outcome of the case. The record provides equally strong support for this finding. The trial transcript offers *no* evidence that counsel's actions resulted in the seating of a juror biased or otherwise prejudiced against Gardner. The juror in question unequivocally told the trial judge at *voir dire* that she could decide the case based solely on the evidence presented in court, that she held no bias for or against either party, and that she would give both sides a fair and impartial trial. Moreover, in the post-conviction hearing, Gardner failed to offer any evidence of asserted prejudice resulting from the juror's service. He simply averred then, as he does before us now, that the participation of a biased juror is presumptively prejudicial.[2] Because we hold that the state court did not err in concluding that the juror was not biased, Gardner's presumptive prejudice argument must fail.

In sum, we agree with the state court that counsel's conduct in not exercising a peremptory strike to prevent service by this juror neither constituted deficient representation nor resulted in prejudice to Gardner. The state court neither unreasonably applied nor acted contrary to clearly established Supreme Court precedent. 28 U.S.C.A. § 2254(d). Therefore, this claim too fails.

B.

Gardner next contends that his attorneys presented inadequate mitigation evidence during the sentencing phase of his trial and that this

---

[2]At least one of our sister circuits has so held. *See Hughes*, 258 F.3d at 463. We have never reached this question, and we need not do so here because nothing in the record indicates that the challenged juror was actually biased.

asserted failure constituted constitutionally ineffective assistance of counsel. He argues that his attorneys presented vague and inconsistent mitigation evidence and expert testimony that inadequately and inaccurately described his mental condition. He also maintains that defense counsel failed to present evidence that would have provided a more accurate and compelling account of his background and mental state.

Criminal defendants have a constitutionally protected right to provide the jury with mitigating evidence that may affect the jury's assessment of whether a sentence is "just" and "appropriate." *See Williams v. Taylor*, 529 U.S. 362, 396-97 (2000). For this reason, defense counsel have an obligation to "conduct a thorough investigation of the defendant's background" in order to identify and produce mitigation evidence; failure to do so renders an attorney's performance deficient. *Id.* at 395-96. But when determining whether counsel has delivered a constitutionally deficient performance, a state court also may consider a defendant's own degree of cooperation, even in a capital case. *See Frye v. Lee*, 235 F.3d 897, 904-05 (4th Cir. 2000).

The PCR court rejected Gardner's contention that his counsel did not adequately investigate and present evidence of his background for mitigation purposes. The court found that despite Gardner's lack of cooperation, counsel made diligent attempts to obtain mitigating information. The court further determined that virtually all of the evidence that Gardner contends counsel should have presented to the jury, counsel did in fact present. For example, the court found that the additional experts who testified at the PCR hearing offered essentially the same evidence as those who testified at trial, albeit in a more compelling form.

The state court's holding that defense counsel investigated and presented mitigation evidence in an objectively reasonable manner is not unreasonable or contrary to clearly established Supreme Court precedent. Both defense attorneys testified before the PCR court, without contradiction, that Gardner advised his family members not to cooperate with counsel's efforts to develop mitigating evidence. They also testified that Gardner refused, until shortly before the beginning of his trial, to provide medical releases that might have aided counsel in developing mitigation evidence. Nevertheless,

defense counsel continued to seek mitigating information from Gardner's family, even traveling to Gardner's home in Detroit to obtain that information. They also consulted with two medical experts regarding Gardner's mental condition. In sum, the record reveals that, although burdened by an uncooperative client, defense counsel made significant efforts to develop and present mitigation evidence. Given these facts, we cannot say that the state court acted unreasonably in concluding that counsel's actions did not fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

The PCR court also concluded that even if Gardner had established that defense counsel presented a constitutionally deficient mitigation case, he still could not demonstrate that this deficiency prejudiced him. In support of this conclusion, the court found that the abundant evidence introduced during the liability phase strongly indicated Gardner's guilt, and since the sentence in a death penalty trial depends "in large part . . . [on] what occurred in the guilt phase," the strength of this evidence likely provided the critical reason for the jury's conclusion that Gardner's conduct warranted a death sentence. The court also reiterated its prior conclusion that, during the penalty phase, the defense presented the jury virtually the same evidence that Gardner believes essential to his mitigation case, although counsel did so in a less dramatic form than Gardner now claims was required. The court further found that even if the defense had offered marginally more persuasive mitigating evidence, for example, testimony of physicians who could provide a more dire and detailed portrait of Gardner's mental state, such evidence would not have materially helped Gardner's mitigation case. Finally, the PCR court observed that during the sentencing phase, the jury found three aggravating factors — kidnapping, criminal sexual conduct, and physical torture — and the court concluded that the very substantial evidence establishing these factors would have outweighed even the more detailed mitigation evidence now proposed by Gardner.

On the basis of these findings, the state court held that there was no reasonable probability that, if the jury had heard the additional, more detailed mitigating evidence now proposed by Gardner, the jury would have determined that the balance of aggravating and mitigating factors did not warrant death. Given the record evidence in this case, we cannot conclude that in so holding the state court acted unreason-

ably or contrary to clearly established Supreme Court precedent. *See* 28 U.S.C.A. § 2254(d). Accordingly, this ineffective assistance claim also provides Gardner no basis for habeas relief.

## C.

Finally, Gardner contends that defense counsel mishandled trial testimony that racial animus motivated his crimes and thus denied him constitutionally effective assistance of counsel. Specifically, Gardner asserts that his counsel should have objected to the admission of testimony by prosecution witness Jerry Ward and the introduction of out-of-court statements by prosecution witness Matthew Mack. Gardner claims that the admission of this evidence left the jurors to conclude that racial animus motivated him to commit these crimes, and, for this reason, that he deserved more severe punishment than perpetrators of comparable, non-racially motivated crimes.

## 1.

Ward, a jailhouse lawyer, advised Gardner while Gardner was in jail awaiting trial. At trial, Ward testified that Gardner "didn't want me to think that it [the murder and kidnapping] was racially motivated, because he needed my help," but "obviously it was." Ward also testified that he learned from Gardner that either Gardner or a co-defendant "had problems with a white girlfriend" and so decided "to kill, torture and rape a white woman for a New Year's resolution." Defense counsel did not object to these statements but did examine Ward effectively with respect to other aspects of his testimony.

The PCR court found that defense counsel's failure to object to Ward's testimony reflected a reasonable effort to avoid drawing attention to the testimony. Such a strategic decision, reasoned the PCR court, accorded with the defense's stated trial objective of allowing in much of Ward's testimony so that counsel could use it to "impeach[ ] him across the board" and thereby undermine his credibility. For this reason, the state court found defense counsel did not provide deficient representation with regard to Ward's testimony.

We cannot conclude that in so holding the PCR court acted unrea-

sonably or contrary to clearly established Supreme Court precedent. 28 U.S.C.A. § 2254(d). Ward's two statements constituted just a small portion of his trial testimony. Moreover, the first statement simply contained Ward's opinion — not any fact — and the jurors would have understood from other trial testimony that the second statement referred not to Gardner but to his co-defendant, Matthew Mack, who had a white girlfriend. Furthermore, although defense counsel did not attempt to impeach these statements directly on cross examination, counsel did effectively damage Ward's overall credibility. Accordingly, the state court's holding that counsel's failure to object to these two statements constituted a strategic judgment, rather than ineffective assistance, finds sufficient support in the record.[3]

2.

The challenged statements of Matthew Mack present a more difficult question. In exchange for a sentence of life imprisonment with a possibility of parole, Mack testified at length as the chief prosecution witness against Gardner. Mack had previously provided three statements — two written and one audiotaped — to law enforcement authorities and had testified in his own trial. In those prior statements, Mack reported graphic remarks made to him by Gardner which revealed that a racial animus animated the crimes. At Gardner's trial, however, Mack did not testify on direct examination as to any of these remarks or to any racial animus on Gardner's part, and the prosecutor did not seek to admit Mack's graphic pretrial statements detailing this animus. On cross examination, however, defense counsel agreed to the admission of all of Mack's pretrial statements after the prosecutor objected to defense counsel's detailed cross-examination of Mack regarding one of those statements. In fact, Gardner's own defense counsel positively insisted that if the court were to admit into evidence any of Mack's pretrial statements, then it must admit all of those statements.

---

[3]Having concluded that counsel's performance was not deficient under *Strickland* with regard to the Ward testimony, we need not decide whether that performance prejudiced the defense. *United States v. Roane*, 378 F.3d 382, 409 n.15 (4th Cir. 2004) (citing *Williams v. Kelly*, 816 F.2d 939, 946-47 (4th Cir. 1987)). However, for the reasons stated regarding the asserted prejudicial effect of the Mack testimony, we doubt that counsel's handling of the Ward testimony prejudiced Gardner.

One of the statements contains, in Mack's handwriting, the following:

> On the 28th or 29th of December, 1992, I was sitting in my trailer with Joe Gardner, Matthew Williams, drinking beer and talking. I was telling them that I had a fight with my girlfriend, who is white, and I was mad at her. I said I would like to "fuck her up." I kept talking and said it could be any white bitch, I would fuck up any white bitch. I said I would like to fuck up a white girl right now. Matthew was saying, I'd be down for fucking a white girl. *Joe said, I'd kill the white bitch. Joe said, before the end of the year. That's my New Years resolution, before the end of the year. I understood Joe to mean he meant to kill a white girl before the end of 1992.* Nothing happened the rest of the night.

(Emphasis added).

Mack goes on to recount that on the evening of December 30, 1992, he, along with Williams and Gardner, picked up a young white woman and brought her to their trailer. At that time, Mack relates:

> I had already had it in my mind when she got into the car that she would be fucking us. I was thinking whether this bitch wants to or not she is giving up her pussy. I was thinking about the conversation we had on the 29th of December and I thought this is the white bitch we were going to fuck up, fuck, torture.

Mack then concludes his confession with this account:

> On New Years Eve I asked Matt how many years do you think this takes off for oppression against the black race. Matt replied about ten years. *I believe the killing of the girl by Joe was racially motivated due to the conversation we had just a few days before the incident.* I believe the girl was killed to prevent the girl from testifying against us for what had occurred at the trailer that night.

(Emphasis added).

The state PCR court found that defense counsel's agreement "to the introduction of prior statements . . . in an effort to impeach [Mack's] credibility was . . . entirely consistent with the strategy and tactics deployed throughout the entirety of Mr. Mack's cross-examination" to demonstrate "that Mr. Mack was adding and subtracting testimony as he saw fit." The PCR court thus rejected Gardner's contention that counsel's decision to permit the admission of the Mack statements was one "born out of desperation" rather than strategy and concluded that defense counsel had not provided deficient representation.

This conclusion constitutes an unreasonable application of clearly established Supreme Court precedent, namely the *Strickland* command that counsel must perform at or above "an objective standard of reasonableness." 466 U.S. at 687-88. If defense counsel had not acquiesced in their admission, the jury would never have considered these inflammatory statements. Moreover, although allowing (indeed, causing) the admission of these statements, defense counsel did *not* actually use them to impeach Mack on cross-examination. That fact effectively undermines the PCR court's finding that defense counsel's acquiescence in the admission of the statements constituted a strategic decision. Mack may have been — as the PCR court concluded — "adding and subtracting testimony as he saw fit," but defense counsel utterly failed to establish that this was so. An attorney's insistence upon the admission of evidence that significantly damages his client, without using that evidence in any manner to further his client's interests, cannot be considered "sound trial strategy" and certainly does not comport with "prevailing professional norms." *Strickland*, 466 U.S. at 689, 688. Thus, defense counsel was constitutionally deficient with respect to the admission of the Mack statements and testimony. *See id.* at 688-90. The PCR court's opposite conclusion is an unreasonable application of the Supreme Court's holding in *Strickland*. *See* 28 U.S.C.A. § 2254(d).

The PCR court also found, however, that Gardner failed to establish that his lawyer's conduct with respect to the Mack statements and testimony prejudiced him. In support of this holding, the PCR court found that the prosecutor did not focus on race as an issue during the trial; that all jurors testified that they could view the case without reference to race; that the circumstances of the crime, even absent any reference to racial motivation, supported imposition of the death pen-

alty; and that the jury found evidence of three aggravating circumstances — kidnapping, criminal sexual conduct, and physical torture — which were present without regard to any racial motivation. Accordingly, the PCR court concluded that Gardner failed to show a reasonable probability that the result of his sentencing proceeding would have been different if his counsel had handled Mack's testimony in a more effective manner.

We have carefully reviewed the trial record and find that the state PCR court's prejudice holding was not unreasonable, given the abundant and damaging evidence presented at Gardner's trial. *See* 28 U.S.C.A. § 2254(d); *see also Strickland*, 466 U.S. at 700 (finding no prejudice in light of "overwhelming aggravating factors"). The prosecution placed before the jury overwhelming evidence of kidnapping, repeated rapes, sodomy, torture, and rampant disregard for human life, all prior to the actual murder of an unarmed twenty-five year old woman. Given this evidence, the state court did not act unreasonably in concluding that Gardner failed to demonstrate that there was a reasonable probability that the jury would have issued a more lenient sentence if counsel had properly handled the Mack testimony. This holding was neither contrary to, nor an unreasonable application of, established federal law. Accordingly, this claim for habeas relief also fails.

## IV.

For all of these reasons, the judgment of the district court is

*AFFIRMED*.