SHEDD, Senior Circuit Judge, concurring in part and dissenting in part:
 

 The majority grants Thomas Porter his request for discovery and an evidentiary hearing on his claims of juror bias. In my view, Porter's claim for dishonesty during voir dire was examined and rejected by the Supreme Court of Virginia, and that determination is not an unreasonable application of federal law. Moreover, even assuming his actual bias claim was not adjudicated on the merits by the Supreme Court, it is without merit. Accordingly, I would affirm the district court's dismissal of Porter's
 
 28 U.S.C. § 2254
 
 petition in full. I therefore dissent from Part III of the majority opinion.
 
 [1]
 

 I.
 

 I begin by recounting the facts pertinent to Porter's juror bias claims, claims that hinge on the actions of a single juror, Bruce Treakle. Initially, there is no doubt as to Porter's guilt: he murdered Officer Stanley Reaves in Norfolk. Due to the publicity surrounding the murder, Porter's trial was moved from Norfolk to Arlington County in northern Virginia. At the beginning of voir dire, the circuit judge informed the potential jurors that the case was moved from Norfolk because of "publicity" (J.A. 222), and that the case involved "a charge of capital murder of a law
 enforcement officer." (J.A. 223). The judge also told the jurors that the law enforcement officer was "a Norfolk police officer," (J.A. 227), and the jurors assured the judge that they had not seen or heard "anything about this case either today or any other time," (J.A. 228).
 

 During voir dire, Porter's attorney, Joseph Migliozzi, first asked jurors if they "belonged to any organizations" that "support[ ] law enforcement objectives in your community." (J.A. 248). He then pivoted to a "little more specific question," that is, "[h]ave you, any member of your family or close personal friend worked for or with any law enforcement organization, either as an employee or on a volunteer basis." (J.A. 250-51). Migliozzi noted that several jurors had already provided an answer to that question in response to his first question and clarified what he was asking: "But is anyone here, or a member of your close personal family, worked in law enforcement in any capacity as a volunteer or an employee?" (J.A. 251). This question prompted the following exchange:
 

 MR. MIGLIOZZI: I'm going to start in the back row. Mr. Treakle.
 

 MR. TREAKLE: My nephew is an Arlington County police officer.
 

 MR. MIGLIOZZI: Your nephew?
 

 MR. TREAKLE: Yes.
 

 MR. MIGLIOZZI: In this county here?
 

 MR. TREAKLE: Yes.
 

 MR. MIGLIOZZI: Do you think, with that being the case, that that would impair your ability to sit on this jury and render a fair and impartial verdict in this case?
 

 MR. TREAKLE: No.
 

 (J.A. 251-52).
 

 Multiple jurors answered that they had a relative in law enforcement; all stated that they could remain impartial, and counsel did not move to strike any juror for cause on this basis. Despite the publicity the case had generated in the Norfolk area, Migliozzi did not ask the jurors if they had any family or friends in Norfolk.
 

 After conducting voir dire with the full panel, the circuit judge placed the venire into groups of four to probe their ability to sit impartially on a capital case involving a police officer's murder. During the small group questioning, Migliozzi reminded Treakle that the case involved the capital murder of a police officer and asked, "If you should convict, the defendant, Mr. Porter, of capital murder, could you follow the Court's instructions and consider voting for a sentence of less than the death penalty?" (J.A. 318). Treakle responded, "Yes." (J.A. 318). Migliozzi probed the jurors' ability to weigh testimony from law enforcement officers, asking "[d]o you believe that the testimony of a law enforcement official, a police officer, is more believable than the testimony of another witness just because he or she is a law enforcement officer?" (J.A. 316). Treakle shook his head no. Finally, Treakle and the other venire persons in his small group were asked, "[D]o any of the four of you know of any reason why you could not or would not be able to fairly and impartially determine the facts of the case or abide by the instructions of the Court on the sentencing issues?" (J.A. 316). All four jurors responded in the negative.
 

 Treakle was seated on Porter's jury, and Porter was convicted of Reaves' murder and sentenced to death. After the Supreme Court of Virginia affirmed Porter's conviction and sentence, Porter pursued his state collateral review. As part of the investigation into any potential claims, Porter's habeas counsel, Dawn Davison, had a law student, Maryl Sattler, assist in interviewing jurors. The law student summarized the interview with Treakle as follows:
 

 Ms. Davison ... explained to Mr. Treakle that we were there representing Thomas Porter, and that we were interviewing jurors as part of our review of the entire case. Mr. Treakle indicated that he understood and was willing to speak with us. He explained that he had to pick up his wife at 3:00 pm, so he would only be available for a few minutes.
 

 Ms. Davison asked Mr. Treakle which of the witnesses made the greatest impression on him during the trial. Without hesitation, Mr. Treakle replied that he found the officer's wife (Treva Reaves) to be a very powerful witness. He indicated that he found her testimony moving and very emotional for him because his brother is a sheriff's officer in Norfolk. We were very surprised by this statement because we had read his voir dire prior to the interview and Mr. Treakle had never said anything about this brother. When Ms. Davison asked for clarification, Mr. Treakle repeated that his brother works for the sheriff's department "down in Norfolk." Mr. Treakle said sitting through Mrs. Reaves's testimony had been difficult for him. He expressed sympathy for law enforcement officers, and emphasized that they put their lives on the line every day for the community.
 

 We only spoke with Mr. Treakle for a short while. At approximately 2:45 pm, Mr. Treakle said that he wished he could speak with us longer, but he did not want to be late to pick his wife up from work at 3:00 pm. We thanked him for his time and left his home.
 

 (J.A. 1719) (the Sattler affidavit). According to Sattler, Treakle was "warm and collegial," and he was not asked to sign an affidavit during their discussion. (J.A. 1720).
 

 After speaking to Treakle, Porter obtained an affidavit from Treakle's brother, Pernell, confirming that since 2000 he has been a deputy sheriff in Chesapeake, the neighboring jurisdiction to Norfolk.
 
 [2]
 
 Neither affidavit suggests that Treakle and his brother spoke before or during the trial or have ever spoken about Porter's case. Porter also submitted an affidavit from an alternate juror noting that he was "surprised to learn that some jurors had close family members who were law enforcement officers," and that he was "shocked when one juror said that he had a brother who was a law enforcement officer." (J.A. 1722). Porter did not provide any affidavits suggesting that Treakle exerted any pressure on jurors because of his brother's occupation or that Treakle informed any jurors that his brother lived in Chesapeake.
 

 In his state habeas petition, Porter argued that Treakle provided materially misleading statements during voir dire and was actually biased against him. The Supreme Court of Virginia denied the claim. The court rejected the voir dire claim on the merits, concluding that Treakle "answered
 truthfully that he had a nephew who was [a police officer in Arlington], Arlington County being the jurisdiction where the case was being tried ... and that he was not asked, nor did he have the opportunity to answer, if he had any additional relationships with law enforcement officers."
 
 Porter v. Warden
 
 ,
 
 283 Va. 326
 
 ,
 
 722 S.E.2d 534
 
 , 539 (2012).
 

 Although the Supreme Court did not address whether Treakle was actually biased, it did review a claim that Porter's attorney was ineffective for failing to uncover Treakle's alleged bias. Specifically, Porter claimed that "he was denied the effective assistance of counsel because counsel failed to raise the claim that [Treakle] was biased due to his brother's employment as a law enforcement officer at trial and on direct appeal."
 

 Id.
 

 at 549
 
 . The court rejected this claim, noting it satisfied neither the "performance" nor the "prejudice" prong of the two-part test enunciated in
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 ,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984) :
 

 The record, including the trial transcript and the September 8, 2009 affidavit of counsel, demonstrates that counsel did not know that [Treakle] had a brother in law enforcement. More importantly,
 
 petitioner has provided no admissible evidence that [Treakle] was biased against petitioner
 
 as a result of his brother's employment. Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.
 

 Porter v. Warden
 
 ,
 
 722 S.E.2d at 549
 
 (emphasis added).
 

 Porter next filed a § 2254 petition, renewing his claims of juror bias. The district court first rejected the claim that Treakle was dishonest during voir dire. The court found that Treakle's "failure to advise that he had additional relationships ... did not amount to a deliberate omission of material information."
 
 Porter v. Davis
 
 , No. 3:12-cv-550,
 
 2014 WL 4182677
 
 , at *11 (E.D.Va. Aug. 21, 2014) ("
 
 Porter I
 
 "). Even assuming otherwise, the court explained, Porter still could not show that he was prejudiced because he could not show that a correct answer would have given rise to a valid basis to challenge Treakle for cause.
 
 Id.
 
 at *11-12. The district court did not specifically address any claim for actual bias.
 

 On Porter's prior appeal, we concluded that the district court failed to address Porter's actual bias claim and that, "[b]ecause the district court did not resolve [the actual bias] claim, its decision was not a final order over which we have jurisdiction."
 
 Porter v. Zook
 
 ,
 
 803 F.3d 694
 
 , 695 (4th Cir. 2015) ("
 
 Porter II
 
 "). After the remand, the district court requested briefing on the actual bias claim alone. The court then granted the State's motion to dismiss.
 
 Porter v. Zook
 
 , No. 3:12-cv-550,
 
 2016 WL 1688765
 
 (E.D. Va. Apr. 25, 2016) ("
 
 Porter III
 
 "). The court first determined that the Supreme Court of Virginia adjudicated the actual bias claim when, in the course of reviewing Porter's related ineffective assistance claim, the Supreme Court concluded that Porter had produced no admissible evidence of bias.
 
 Id.
 
 at *7. The court next found that Porter's actual bias claim concerned intrinsic rather than extrinsic bias,
 
 id.
 
 at *9 -10, and that Porter "has failed to substantiate his claim with competent evidence that tends to show Bruce Treakle was biased,"
 
 id.
 
 at *13. The court also noted that, even assuming that the Supreme Court of Virginia did not adjudicate Porter's claim, "under a
 
 de novo
 
 standard of review, no relief is warranted because Treakle's innocuous statements [in the Sattler affidavit] do not indicate that he was biased."
 
 Id
 
 . In the court's view,
 Treakle's statements at most amounted to a generally favorable view of law enforcement, not actual bias.
 

 The majority now concludes that the district court erred in dismissing the actual bias and voir dire claims without an evidentiary hearing. I address each ruling in turn.
 

 II.
 

 Because the state habeas court adjudicated the voir dire claim on the merits, "a federal court may not grant habeas relief unless the adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;' or 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' "
 
 Jones v. Clarke
 
 ,
 
 783 F.3d 987
 
 , 991 (4th Cir. 2015) (quoting
 
 28 U.S.C. § 2254
 
 (d) ). The Supreme Court has consistently reminded us that this standard is "difficult to meet and highly deferential," and "demands that state-court decisions be given the benefit of the doubt."
 
 Cullen v. Pinholster
 
 ,
 
 563 U.S. 170
 
 , 181,
 
 131 S.Ct. 1388
 
 ,
 
 179 L.Ed.2d 557
 
 (2011) (internal quotation marks omitted). Importantly, "an
 
 unreasonable
 
 application of federal law differs from an
 
 incorrect
 
 application of federal law."
 
 Jones
 
 ,
 
 783 F.3d at 991
 
 (emphasis in original).
 

 We apply the two-prong test from
 
 McDonough Power Equipment, Inc. v. Greenwood
 
 ,
 
 464 U.S. 548
 
 ,
 
 104 S.Ct. 845
 
 ,
 
 78 L.Ed.2d 663
 
 (1984) in weighing claims of juror dishonesty during voir dire. Under
 
 McDonough
 
 :
 

 [T]o obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. ... [O]nly those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.
 

 Id.
 

 at 556
 
 . The test applies "equally to deliberate concealment and to innocent nondisclosure."
 
 Conner v. Polk
 
 ,
 
 407 F.3d 198
 
 , 205 (4th Cir. 2005). "[T]he bar for juror misconduct" under
 
 McDonough
 
 "is set high."
 
 Porter II
 
 ,
 
 803 F.3d at 697
 
 .
 

 To show a "valid basis" for a challenge for cause, a party must show the juror's "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."
 
 Wainwright v. Witt
 
 ,
 
 469 U.S. 412
 
 , 424,
 
 105 S.Ct. 844
 
 ,
 
 83 L.Ed.2d 841
 
 (1985). This showing is satisfied if (1) a court "demonstrate[d] a clear disregard for the actual bias" of the juror or (2) "a per se rule of disqualification applies" such that bias should be implied.
 
 United States v. Fulks
 
 ,
 
 454 F.3d 410
 
 , 432 (4th Cir. 2006). "[T]he doctrine of implied bias is limited in application to those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances."
 
 Person v. Miller
 
 ,
 
 854 F.2d 656
 
 , 664 (4th Cir. 1988). Examples include employer/employee relationships, close relatives involved in the litigation, and a witness to (or individual somehow involved in) the criminal transaction.
 
 Fitzgerald v. Greene
 
 ,
 
 150 F.3d 357
 
 , 364 (4th Cir. 1998).
 

 In concluding that the state habeas court unreasonably applied
 
 McDonough
 
 , the majority relies on
 
 Conaway v. Polk
 
 ,
 
 453 F.3d 567
 
 (4th Cir. 2006). The facts of
 
 Conaway
 
 , however, are far removed from those of this case. In
 
 Conaway
 
 , a juror was asked whether he knew any of the State's witnesses. The juror answered that
 he knew the local sheriff. The juror then responded in the negative when asked if he had any family or friends who had interacted with the District Attorney's office. In reality, the juror was a cousin of a co-defendant who happened to be the State's primary witness. We concluded that there were "multiple questions posed to [the juror] that could candidly be answered only by acknowledging his kinsman," and that the state court was unreasonable to find otherwise.
 

 Id.
 

 at 585
 
 .
 

 Here, in contrast, after being informed that the case was about the murder of a police officer, Treakle answered that he had a close family member in law enforcement: a nephew serving as a police officer in the very jurisdiction the case was being tried. After affirming that his nephew's occupation would not affect his ability to be impartial, counsel moved on to other jurors without asking follow-up questions. There are not "multiple questions" that could "candidly be answered" only by acknowledging that his brother was a sheriff's deputy.
 

 "
 
 McDonough
 
 provides for relief only where a juror gives a dishonest response to a question actually posed, not where a juror innocently fails to disclose information that might have been elicited by questions counsel did not ask."
 
 Billings v. Polk
 
 ,
 
 441 F.3d 238
 
 , 245 (4th Cir. 2006). Porter's attorney asked only if "anyone here" or "a member of your close personal family" was in law enforcement. He did not ask the jurors to name every family member in law enforcement and he did not follow up with Treakle to ask if any other members of his family were in law enforcement. As we previously acknowledged, "a juror's failure to elaborate on a response that is factually correct but less than comprehensive may not meet [
 
 McDonough
 
 ] where no follow-up question is asked."
 
 Porter II
 
 ,
 
 803 F.3d at 697
 
 . Porter's attorney asked if a member of a juror's family was in law enforcement, and Treakle answered truthfully that a member of his family was a police officer in the jurisdiction where the case was being tried. Treakle's answer is not "misleading, disingenuously technical, or otherwise indicative of an unwillingness to be forthcoming."
 
 Billings,
 

 441 F.3d at
 
 245 n. 2.
 

 The facts of this case are akin to
 
 United States v. Benabe
 
 ,
 
 654 F.3d 753
 
 (7th Cir. 2011). In
 
 Benabe
 
 , the defendants were members of the Insane Deuces gang. During voir dire, Juror 79 answered affirmatively when asked if she had any friends or relatives involved in gangs. No follow-up question was posed, but during the trial the jury foreperson informed the trial judge that Juror 79 told her that her son had been a member of the Insane Deuces for two years.
 

 Id.
 

 at 780
 
 . The Seventh Circuit determined that Juror 79 was not dishonest during voir dire; while confessing that the court's "eyebrows went up" when first confronted with Juror 79's son, the court explained that Juror 79 "answered correctly during voir dire that her son had been involved in a gang," and that "nobody asked her" which gang.
 

 Id.
 

 at 781
 
 . Defense counsel "did not ask any follow-up questions," and, in light of this failure, the defendants "lost their ability to seek a new trial on this basis."
 

 Id.
 
 See also
 

 Marquez v. City of Albuquerque
 
 ,
 
 399 F.3d 1216
 
 , 1224 (10th Cir. 2005) (rejecting
 
 McDonough
 
 claim where counsel "asked the juror only about her participation in dog training and never about her knowledge of dog training;" the juror's "specialized knowledge" was not uncovered during voir dire because counsel failed "to fully examine the juror," not because of "any misrepresentation by the juror"). Like
 
 Benabe
 
 , in my opinion, the failure to uncover Treakle's brother's occupation and residency stems from Porter's counsel's failure to ask a follow-up question.
 

 Moreover, even assuming we believe Treakle should have listed every family member with ties to law enforcement, it certainly is not "unreasonable
 
 under Supreme
 

 Court precedent
 
 " to conclude, as did the state habeas court, that Treakle did not fail to answer the question honestly.
 
 Billings,
 

 441 F.3d at 247
 
 (emphasis in original). After all, "an
 
 unreasonable
 
 application of federal law differs from an
 
 incorrect
 
 application of federal law."
 
 Jones
 
 ,
 
 783 F.3d at 991
 
 (emphasis in original).
 

 In addition, even assuming Porter has satisfied the first prong of
 
 McDonough
 
 , he cannot show that a correct answer would have given rise to a valid challenge for cause. Pernell Treakle's occupation as a deputy sheriff would not provide a basis for finding implied bias. Implied bias has been limited to "exceptional and extraordinary situations," such as familial relationship with a trial participant, being an employee of the prosecuting agency, or being involved in the charged crime.
 
 Fitzgerald
 
 ,
 
 150 F.3d at 365
 
 (internal quotation marks omitted). We have thus rejected its application where a juror inadvertently failed to disclose her husband's murder in a capital murder case,
 
 Fulks
 
 ,
 
 454 F.3d at 432-33
 
 , and where a juror withheld her belief that her son had been murdered,
 
 Gardner v. Ozmint
 
 ,
 
 511 F.3d 420
 
 , 424-25 (4th Cir. 2007). Regarding ties to law enforcement, in
 
 United States v. LaRouche
 
 ,
 
 896 F.2d 815
 
 , 830 (4th Cir. 1990), we rejected a challenge to the district court's refusal to strike three jurors with such ties, including one whose husband was an FBI agent because it was "consistent" with "case law that refuses to establish a per se rule excluding any person who has had an association with an investigatory agency."
 
 See also
 

 United States v. Umana
 
 ,
 
 750 F.3d 320
 
 , 342 (4th Cir. 2014) ("A juror's generally favorable impression of law enforcement does not necessarily amount to bias any more than does a juror's personal association with law enforcement."). It is clear that Pernell Treakle's occupation does not create a per se rule of disqualification.
 

 Likewise, there is no showing that a truthful answer would yield a finding of actual bias
 
 during
 
 the voir dire. Treakle admitted to having a close family member in law enforcement and affirmed that the relationship would not impact his ability to be impartial. As the voir dire continued, Treakle affirmed on multiple occasions that the fact that the case involved the murder of a police officer would not affect his ability to be impartial. There is no evidence that Treakle was anything less than truthful when he answered these questions.
 

 The majority addresses the second
 
 McDonough
 
 prong by positing that it "cannot surmise which follow up questions (and answers) may have followed" from Treakle mentioning his brother's employment. (Majority Op. at 432). In my view, we can; counsel asked the same follow-up question to each juror with ties to law enforcement, and Treakle repeatedly stated that he could be impartial in this case. As the district court aptly explained:
 

 Although Porter now suggests that exploring the nuances of each venire person's relationships with, and any empathy for, law enforcement officials was critical to assessing whether a juror could remain impartial, the contemporaneous voir dire suggests otherwise. ... [T]he attorneys trying the case and who were most familiar with the facts were content with a general reassurance from the venire person that any relationship he or she had with law enforcement officials would not impair his or her ability to render a fair and impartial verdict[.]
 

 Porter III
 
 ,
 
 2016 WL 1688765
 
 , at *2. Porter's current counsel is of the belief that ties to law enforcement and the Norfolk area should have been red flags to sitting a juror; Porter's trial counsel did not-asking only a general follow-up about impartiality and failing to inquire into ties to Norfolk.
 

 The majority concludes that the district court committed reversible error in dismissing Porter's
 
 McDonough
 
 claim and remands the case for discovery and an evidentiary hearing. Given the way in which the majority reaches this conclusion, I am left to wonder, "What is left to consider?"
 
 United States v. Blackledge
 
 ,
 
 751 F.3d 188
 
 , 214 (4th Cir. 2014) (Shedd, J., dissenting). In reversing the district court's dismissal of the
 
 McDonough
 
 claim, the majority necessarily concludes not that Treakle might have been dishonest at voir dire, or that there is a factual disagreement about his honesty, but that it was unreasonable as a matter of clearly established federal law to conclude that he was honest. Presumably, regardless of Treakle's testimony at a future evidentiary hearing regarding his answers at voir dire, the district court cannot find him credible. On the second prong of
 
 McDonough
 
 , the majority remands because it cannot speculate as to what questions would have emerged had Treakle mentioned his brother. Is the district court also supposed to speculate? Is Porter's trial counsel going to testify? Will his testimony be anything other than self-serving in favor of Porter? I believe the district court correctly determined that the Supreme Court of Virginia did not unreasonably apply clearly established law, and I would affirm dismissal of the
 
 McDonough
 
 claim.
 

 III. Actual Bias
 

 The majority, applying a de novo standard of review,
 
 [3]
 
 also remands Porter's actual bias claim for further proceedings, including discovery and an evidentiary hearing. In contrast to the majority, I believe the district court correctly denied an evidentiary hearing because Porter "had ample opportunity at voir dire to discover" further information about Treakle's alleged bias.
 
 Billings
 
 ,
 
 441 F.3d at 245
 
 .
 

 In
 
 Smith v. Phillips
 
 ,
 
 455 U.S. 209
 
 , 215,
 
 102 S.Ct. 940
 
 ,
 
 71 L.Ed.2d 78
 
 (1982), the Court stated that it "has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."
 
 Smith
 
 , however, "does not mean that a court is obliged to hold an evidentiary hearing any time that a defendant alleges juror bias, regardless of whether he utilized the pre-trial procedures available for ensuring the jury's impartiality."
 
 Billings
 
 ,
 
 441 F.3d at 245-46
 
 . After all, a juror's dishonesty during voir dire "is the best initial indicator of whether the juror in fact was impartial."
 
 McDonough
 
 ,
 
 464 U.S. at 556
 
 ,
 
 104 S.Ct. 845
 
 (Blackmun, J., concurring). Granting a hearing even in situations where trial counsel failed to adequately conduct voir dire would let defendants "sandbag the courts by accepting jurors onto the panel without exploring on voir dire their possible sources of bias and then, if their gambit failed and they were convicted, challenging their convictions by means of post-trial evidentiary hearings based on newly discovered evidence of possible juror bias."
 
 Billings
 
 ,
 
 441 F.3d at 246
 
 .
 

 Thus, as we noted in
 
 Billings
 
 , evidentiary hearings are appropriate where the potential biases were not discoverable during
 voir dire, either because the juror deliberately omits material information or because the potential bias is the result of a later-occurring external influence.
 

 Id.
 

 at 246 n.4. As discussed
 
 supra
 
 , Treakle was not dishonest during voir dire, and there is simply no credible allegation of an external influence.
 
 [4]
 
 Porter's "evidence," including the Sattler affidavit, at most suggests a preexisting juror bias, but
 
 Smith's
 
 rule in favor of evidentiary hearings "applies only to prejudicial extraneous contacts, not to preexisting juror bias."
 
 Benabe
 
 ,
 
 654 F.3d at
 
 780 ;
 
 Robinson v. Polk
 
 ,
 
 438 F.3d 350
 
 , 363-64 (4th Cir. 2006) (emphasizing the importance of distinguishing between internal and external influences upon a jury). Instead, "[a] post-verdict inquiry into intrinsic juror influences is almost never justified."
 
 Benabe
 
 ,
 
 654 F.3d at
 
 780 (citing Fed. R. Evid. 606(b) ;
 
 Marquez
 
 ,
 
 399 F.3d at 1223
 
 ("A juror's personal experience ... does not constitute extraneous prejudicial information."). "The tool for examining an intrinsic influence like juror bias ... is a voir dire."
 
 United States v. McClinton
 
 ,
 
 135 F.3d 1178
 
 , 1186 (7th Cir. 1998).
 
 See also
 

 McDonough
 
 ,
 
 464 U.S. at 554
 
 ,
 
 104 S.Ct. 845
 
 ("Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors.").
 

 Moreover, in my view any hearing would be futile. Apart from the claim of dishonesty during voir dire, Porter's claim of actual bias also relies on the allegation from the Sattler affidavit that Bruce Treakle was "moved" by testimony from Office Reeves's widow. This "innocuous statement[ ] do[es] not indicate that he was biased."
 
 Porter III
 
 ,
 
 2016 WL 1688765
 
 , at *13, because every piece of evidence is meant to be moving to a juror; after all, we do not expect them "to come into the juror box and leave behind all that their human experience has taught them,"
 
 J.E.B. v. Alabama ex rel. T.B.
 
 ,
 
 511 U.S. 127
 
 , 149,
 
 114 S.Ct. 1419
 
 ,
 
 128 L.Ed.2d 89
 
 (1994) (O'Connor, J., concurring) (internal quotation marks omitted). What if Bruce Treakle was recently widowed and told Sattler that Mrs. Reaves' testimony was moving precisely because he, too, was adjusting to life as a single parent? Or if another juror was moved by the testimony of Valorie Arrington (who Porter terrorized before murdering Officer Reaves) because of their experience living in a low-income housing complex? The Commonwealth put forth Mrs. Reaves' testimony precisely because it hoped that it would be moving to the jury. The fact that it was successful is not, in my view, evidence of bias.
 

 Moreover, and more importantly, Treakle's statement is barred by Federal Rule of Evidence 606(b)(1), which prohibits a juror from testifying "[d]uring an inquiry into the validity of a verdict," about "the effect of anything on that juror's ... vote" or "any juror's mental processes concerning the verdict or indictment." The Rule permits a juror to testify if "extraneous prejudicial information was improperly brought to the jury's attention;" or if "an outside influence was improperly brought to bear on any juror." Fed. R. Evid. 606(b)(2)(A, B). "Jurors' personal experiences
 do not constitute extraneous information; it is unavoidable they will bring such innate experiences into the jury room."
 
 Warger v. Shauers
 
 ,
 
 721 F.3d 606
 
 , 611 (8th Cir. 2013),
 
 aff'd
 
 --- U.S. ----,
 
 135 S.Ct. 521
 
 ,
 
 190 L.Ed.2d 422
 
 (2014).
 
 Cf.
 

 Robinson
 
 ,
 
 438 F.3d at 363
 
 (4th Cir. 2006) (noting as internal an influence that merely "invites the listener to examine his or her own conscience from within"). Rule 606(b) extends to testimony suggesting that a juror was dishonest during voir dire.
 
 Warger v. Shauers
 
 , --- U.S. ----,
 
 135 S.Ct. 521
 
 , 525,
 
 190 L.Ed.2d 422
 
 (2014). Applying Rule 606(b), the alternate juror's affidavit would be inadmissible in any evidentiary hearing, as would Treakle's comments referenced in the Sattler affidavit. The fact of Treakle's brother's occupation and the impact of Mrs. Reaves' testimony on Treakle are both " 'internal' matters subject to exclusion under Rule 606(b)."
 

 Id.
 

 at 530
 
 .
 

 Ultimately, my determination that the failure to uncover Treakle's brother's occupation lies at the feet of Porter's counsel rather than Treakle undermines the request for an evidentiary hearing on the actual bias claim. Apart from the alleged dishonesty at voir dire, the actual bias claim rests on evidence that, in my view, is either barred by Rule 606(b) or does not suggest improper juror bias.
 

 IV.
 

 For the foregoing reasons, I would affirm the dismissal of Porter's § 2254 petition in full.
 

 I concur in the remainder of the majority opinion, which affirms the dismissal of Porter's other claims.
 

 In state habeas proceedings, Porter contended that Pernell's job was "transporting prisoners in the custody of the Department of Corrections." (J.A. 1652). In Chesapeake, the Police Department "is responsible for the prevention and detection of crime, the apprehension of criminals, the safeguard of life and property, the preservation of peace and the enforcement of state and local laws, regulations, and ordinances" in the jurisdiction. Va. Code § 15.2-1704(A). Pernell's employer, the Chesapeake Sheriff's Department, is primarily responsible for operating the city jail and assisting with judicial process. Va. Code. § 15.2-1609.
 
 See also
 
 Virginia Sheriff's Association,
 
 Sheriffs' Offices Responsibilities
 
 , https://vasheriff.org/sheriffs-resources/sheriffs-offices-responsibilities/ (last visited July 12, 2018) (saved as ECF attachment) (noting that City of Chesapeake Sheriff is responsible for civil process, court security, and local jail operation but not for law enforcement).
 

 For purposes of my opinion, I will assume (without deciding) that the Supreme Court of Virginia did not "adjudicate[ ]" Porter's actual bias claim within the meaning of
 
 28 U.S.C. § 2254
 
 (d).
 

 The majority adopts Porter's "evidence" that the areas of Norfolk and Chesapeake were deeply affected by the death of Reeves and a Chesapeake police officer, Michael Saffran. I do not doubt this fact, only the inferences drawn from it-namely, that Treakle was biased against Porter because of his brother's occupation and residence. There is no evidence in the record that Treakle was aware of the community's feelings or that he had ever spoken to his brother about the case. Treakle stated during voir dire that he had not heard about the case, and Pernell's affidavit does not suggest any communication between the brothers.